[No. 54505-7.   En Banc.   July 7, 1988.]

THE STATE OF WASHINGTON, *Respondent,* v. STEVE GARY SOHAPPY, *Petitioner.*

*Russell J. Grattan* and *Susan K. Lourne,* for petitioner.

*Robert K. Leick, Prosecuting Attorney,* and *Grant E. Hansen, Deputy,* for respondent.

BRACHTENBACH, J.—The single issue is whether the State has jurisdiction for criminal prosecution of an enrolled member of the Yakima Indian Nation for assaults on non–Indian law enforcement officers at an "in–lieu" fishing site? The defendant's jury conviction was affirmed by the Court of Appeals in an unpublished opinion. *State v. Sohappy,* noted at 49 Wn. App. 1031 (1987). We reverse.

The in–lieu site involved here, Cooks Landing, is on the Columbia River. This site resulted from congressional legislation authorizing the Secretary of War

> to acquire lands and provide facilities in the States of Oregon and Washington to replace Indian fishing grounds submerged or destroyed as a result of the construction of Bonneville Dam . . . *Provided further,* That such lands and facilities shall be transferred to the Secretary of the Interior for the use and benefit of the Indians, and shall be subject to the same conditions, safeguards, and protections as the treaty fishing grounds submerged or destroyed;

Act of Mar. 2, 1945, Pub. L. No. 14, 59 Stat. 22 (1945).

The in–lieu fishing sites so established are for the benefit of the Yakima, Umatilla, and Warm Springs Indian Tribes, and such other Columbia River Indians, if any, who had treaty fishing rights at locations inundated or destroyed by

Bonneville Dam. *The use of the sites is restricted to such Indians.* 25 C.F.R. § 248.2 (1987). The Indian treaty fishing rights resulted from an 1855 treaty with 14 confederated tribes and bands considered for purposes of the treaty as one nation under the name of "Yakama." The treaty was ratified by Congress in 1859. 12 Stat. 951 (1863).

At the outset we note two points: (1) Our holding is narrowly limited to the in–lieu site here involved. We so restrict our holding because of the Ninth Circuit decision upon which we rely, cited hereafter. (2) The State's 4–page brief is of no use to this court. It cites not a single case.

The question of jurisdiction here is dependent upon an analysis of RCW 37.12.010, enacted in 1963 by Laws of 1963, ch. 36. The state statute was enacted pursuant to congressional authority contained in Pub. L. No. 83–280, § 6, 67 Stat. 588 (1953). The United States Supreme Court held that RCW 37.12.010 complies with Pub. L. No. 83–280 and is constitutional. *Washington v. Confederated Bands & Tribes of Yakima Indian Nation,* 439 U.S. 463, 58 L. Ed. 2d 740, 99 S. Ct. 740, *reh'g denied,* 440 U.S. 940, 59 L. Ed. 2d 500, 99 S. Ct. 1290 (1979).

Pursuant to RCW 37.12.010, the State assumed criminal and civil jurisdiction over Indians and Indian territory, reservations, country, and lands, but such jurisdiction shall not apply to Indians when on their tribal lands or allotted lands within an established Indian reservation and held in trust by the United States. Eight categories of full jurisdiction regardless of land status were established; none is applicable here. Jurisdiction beyond those eight categories over Indians on allotted and trust lands would be assumed only if the affected tribe so requested. RCW 37.12.021. The Yakima Indian Nation has not requested state assumption of full jurisdiction.

The question is whether this in–lieu site is within the category described in RCW 37.12.010 over which the State has not asserted jurisdiction. Specifically, was the defendant on tribal lands or allotted lands within an established

Indian reservation and held in trust by the United States, the delimiting language of the statute?

■ Our jurisdictional statute must be construed in accordance with federal law. Under 18 U.S.C. § 13 (1982), a violation of state law within "Indian country" is a *federal* offense. 18 U.S.C. § 1152 (1982). This court has held that jurisdiction under 18 U.S.C. § 1152 (1982) is exclusive. *Arquette v. Schneckloth,* 56 Wn.2d 178, 182–83, 351 P.2d 921 (1960). The United States Supreme Court noted that on lands and restricted lands within the reservations in Washington where the tribes have not requested state jurisdiction over crimes by Indians, jurisdiction is shared by the tribal and federal governments. *Washington v. Confederated Bands & Tribes of Yakima Indian Nation, supra* at 498–99.

The status of this very in–lieu site was considered in *United States v. Sohappy,* 770 F.2d 816 (9th Cir. 1985), *cert. denied,* 477 U.S. 906 (1986). Defendants there were convicted of violations of the Lacey Act, 16 U.S.C. § 3372 (1982), prohibiting taking and selling fish in violation of Indian tribal law or state law. Only tribal law offenses which occur within "Indian country" are within 16 U.S.C. § 3372 (1982). "Indian country" is defined to include "all land within the limits of any Indian reservation under the jurisdiction of the United States Government". 18 U.S.C. § 1151 (1982).

The Ninth Circuit noted, as we have noted, that the Cooks Landing site was transferred to the Secretary of the Interior "for the use and benefit of the Indians" and that it is subject to federal regulation under 25 C.F.R. pt. 248 (1987).

The court said:

The term "Indian reservation" is not defined by statute. However, the Supreme Court in *United States v. John,* 437 U.S. 634, 649, 98 S.Ct. 2541, 2549, 57 L.Ed.2d 489 (1978), suggested that land "declared by Congress to be held in trust by the Federal Government for the benefit of the . . . Indians . . . [is a] 'reservation,' at least

for the purposes of federal criminal jurisdiction [under 18 U.S.C. § 1153]." Similarly, the Supreme Court in *United States v. Pelican,* 232 U.S. 442, 449, 34 S.Ct. 396, 399, 58 L.Ed. 676 (1914), stated the principal test as whether the land "had been validly set apart for the use of the Indians as such, under the superintendence of the Government." *Accord Cheyenne–Arapaho Tribes v. State of Oklahoma,* 618 F.2d 665, 667–68 (10th Cir. 1980) (holding that lands held in trust by the United States for the Tribes are Indian country within the meaning of § 1151(a)).

*United States v. Sohappy, supra* at 822. The court then concluded: "It is evident, therefore, that the Celilo and Cooks Landing sites amount to 'reservation land' under the tests laid out in *John* and *Pelican.*" *United States v. Sohappy, supra* at 823.

The Ninth Circuit's analysis is persuasive and we find it legally correct. Since the State does not cite the case, it obviously fails to distinguish it. The State relies entirely upon a Bureau of Indian Affairs regulation, issued by the Portland area office, which states: "Each of these sites [including Cooks Landing] are [*sic*] under state law and order jurisdiction." Brief of Respondent, at 3. The State does not provide a citation to when or how the purported regulation was promulgated nor to any source where it is published. In any event, jurisdictional questions are not determined by such regulations, especially in the face of persuasive case authority.

The in–lieu site obviously is not within the original boundaries of the reservation itself described in the 1855 treaty; however, it is a part of a reservation for purposes of application of our state jurisdiction statute. The Ninth Circuit has held that the Cooks Landing site is within an Indian reservation. This vests exclusive jurisdiction in the federal and tribal governments as stated by the United States Supreme Court in *Washington v. Confederated Bands & Tribes of Yakima Indian Nation, supra.* It necessarily follows that RCW 37.12.010, by its terms, excludes state jurisdiction over this site.

The Court of Appeals and the trial court are reversed.

PEARSON, C.J., and UTTER, DOLLIVER, DORE, ANDERSEN, CALLOW, GOODLOE, and DURHAM, JJ., concur.

Reconsideration denied December 12, 1988.