[No. 61961-1.    En Banc.    March 30, 1995.]

CERTIFICATION FROM
THE UNITED STATES TAX COURT

IN

*In the Matter of the Estate of*
MILLIE CROSS.

SILAS A. CROSS, *Petitioner*, v. THE COMMISSIONER OF
INTERNAL REVENUE, *Respondent*.

---

*Douglas Sulkosky,* for petitioner.

*Loretta C. Argrett, Assistant Attorney General of the United States,* and *Gary R. Allen, Bruce R. Ellisen,* and *S. Robert Lyons,* for respondent.

*Christine O. Gregoire, Attorney General,* and *John W. Hough, Senior Assistant,* amicus curiae.

DURHAM, C.J. — In a federal income tax cause of action before the United States Tax Court, the Commissioner of Internal Revenue (Commissioner) seeks to collect from the

Estate of Millie Cross unpaid income tax on unincorporated business income earned by Millie Cross's husband, Silas Cross. The United States Tax Court certified the following question of state law to this court:

> Does Washington State community property law (Wash. Rev. Code 26.16 et seq.) apply to determine property rights as between an enrolled member of the Puyallup Tribe and his nonenrolled wife with respect to unincorporated business income derived from the operation of a smokeshop on the Puyallup Indian Reservation by the enrolled member?

We answer the certified question in the affirmative.

Millie and Silas Cross were married in 1940 and remained married until Millie Cross died in 1991. Silas Cross died in 1992. Since the time of their marriage, Millie and Silas Cross lived on the Puyallup Indian Reservation. The Puyallup Indian Reservation is bordered on all sides by the state of Washington. Silas Cross was an enrolled member of the Puyallup Indian Nation. Millie Cross was never an enrolled member of the Puyallup Indian Nation or any other Indian Nation.

In 1977, 1978, and 1979 Silas Cross operated the Cross Smokeshop (Smokeshop). Millie Cross did not participate in either the operation or management of the Smokeshop during these 3 years. The Smokeshop was located on the Puyallup Indian Reservation. The real property upon which the Crosses resided and upon which the Smokeshop was operated was held in trust by the United States for the benefit of Silas Cross. The Smokeshop sold cigarettes and other tobacco products and had a net profit to Silas Cross of $175,435 in 1977, $116,248 in 1978, and $150,622 in 1979.

On August 8, 1990, the Commissioner issued to Millie Cross a statutory notice of deficiency, which determined an increase in income tax for 1977, 1978, and 1979 in the amount of $45,405, $26,135, and $36,323 respectively. The income tax deficiencies were based on a determination that the income from the Smokeshop was community property under Washington domestic relations law and, therefore, one-half of the net income was attributable and taxable to

Millie Cross. Millie Cross did not file a federal income tax return in 1977, 1978, and 1979.

Millie Cross filed a petition in the United States Tax Court on October 29, 1990, seeking redetermination of the income tax deficiencies. She died during the pendency of the tax court proceeding on December 12, 1991. Thereafter, her son, Silas A. Cross, was appointed administrator of her estate and the estate was substituted as a party before the Tax Court. The Estate of Millie Cross challenges the commissioner's determination that one-half of the Smokeshop income earned by Silas Cross is taxable to Millie Cross. The Estate of Millie Cross argues Washington community property law is inapplicable to determine property rights as between an Indian and a non-Indian living on the Puyallup Indian Reservation. The Tax Court, rather than deciding whether Washington community property law applies to Indians and Indian territory under RCW 37.12.010, certified the question to this court pursuant to RAP 16.16.

## PUBLIC LAW 280

"Congress has plenary authority over the Indians and all their tribal relations, and full power to legislate concerning their tribal property." *Winton v. Amos*, 255 U.S. 373, 391, 65 L. Ed. 684, 41 S. Ct. 342 (1921). In accordance with this authority, Congress has the power to create or abrogate Indian rights, including tribal sovereignty. *United States v. Wheeler*, 435 U.S. 313, 323, 55 L. Ed. 2d 303, 98 S. Ct. 1079 (1978); Judith V. Royster & Rory S.A. Fausett, *Control of the Reservation Environment: Tribal Primacy, Federal Delegation, and the Limits of State Intrusion*, 64 Wash. L. Rev. 581, 588-89 (1989).

In 1953 Congress, in an attempt to strike a balance between abandoning the Indians to the states and maintaining them as wards of the federal government, enacted Public Law 280.[1] *In re Adoption of Buehl*, 87 Wn.2d 649, 655, 555 P.2d 1334 (1976). Public Law 280 conferred civil and

---

[1]Pub. L. No. 280, 67 Stat. 588 (1953) (codified as amended at 18 U.S.C. § 1162; 25 U.S.C. §§ 1321-1326; 28 U.S.C. § 1360).

criminal jurisdiction over Indians and Indian territory to five states, with an express exception for three Indian reservations. Pub. L. No. 280 §§ 2, 4; *Washington v. Confederated Bands & Tribes of Yakima Indian Nation*, 439 U.S. 463, 471-72, 58 L. Ed. 2d 740, 99 S. Ct. 740, *reh'g denied*, 440 U.S. 940 (1979). Public Law 280 gave all other states, including Washington, an option to assume civil and criminal jurisdiction over Indians and Indian territory. Pub. L. No. 280 §§ 6, 7; *Yakima Indian Nation*, 439 U.S. at 473-74. As enacted in 1953, Public Law 280 did not require states to obtain consent from Indian tribes prior to assuming civil or criminal jurisdiction. *Yakima Indian Nation*, 439 U.S. at 473-74; *State v. Schmuck*, 121 Wn.2d 373, 394, 850 P.2d 1332 (1993).

Subsequently, Congress passed the Indian Civil Rights Act of 1968. 25 U.S.C. §§ 1321-23.[2] The Indian Civil Rights Act required consent on all future assumptions of civil and criminal jurisdiction over Indians and Indian territory, but it did not make the consent provision retroactive, nor did it invalidate any prior assumption of civil or criminal jurisdiction under Public Law 280. *Three Affiliated Tribes v. Wold Eng'g, P.C.*, 467 U.S. 138, 150-51, 81 L. Ed. 2d 113, 104 S. Ct. 2267 (1984); *In re Buehl*, 87 Wn.2d at 655 n.3; Carole E. Goldberg, *Public Law 280: The Limits of State Jurisdiction Over Reservation Indians*, 22 UCLA L. Rev. 535, 539 (1975).

RCW 37.12.010

■ Pursuant to Public Law 280, the Legislature in 1963 amended RCW 37.12.010.[3] *State v. Sohappy*, 110 Wn.2d 907, 909, 757 P.2d 509 (1988). Under RCW 37.12.010, the State of Washington assumed full civil and criminal jurisdiction over Indians and Indian territory within the state with respect to eight areas. *Sohappy*, 110 Wn.2d at 909. Domestic relations is one of the eight areas where full jurisdiction was assumed. RCW 37.12.010 provides in pertinent part:

---

[2]Pub. L. No. 90-284 §§ 401(a), 402(a), 403(a), 82 Stat. 73, 78-79 (1968).

[3]Laws of 196+3, ch. 36, § 1, amending Laws of 1957, ch. 240, § 1.

The state of Washington hereby obligates and binds itself to assume criminal and civil jurisdiction over Indians and Indian territory, reservations, country, and lands within this state in accordance with the consent of the United States given by the act of August 15, 1953 (Public Law 280, 83rd Congress, 1st Session), but such assumption of jurisdiction shall not apply to Indians when on their tribal lands or allotted lands within an established Indian reservation and held in trust by the United States or subject to a restriction against alienation imposed by the United States, unless the provisions of RCW 37.12.021 have been invoked, except for the following:

(1) Compulsory school attendance;

(2) Public assistance;

(3) Domestic relations;

(4) Mental illness;

(5) Juvenile delinquency;

(6) Adoption proceedings;

(7) Dependent children; and

(8) Operation of motor vehicles upon the public streets, alleys, roads and highways . . ..

The United States Supreme Court held RCW 37.12.010 complies with Public Law 280 and is constitutional. *Yakima Indian Nation*, 439 U.S. at 473-74; *Schmuck*, 121 Wn.2d at 394; *see also Makah Indian Tribe v. State*, 76 Wn.2d 485, 493, 457 P.2d 590 (1969) (vehicles being operated by Indians upon public roads running through a reservation are subject to state jurisdiction and control pursuant to RCW 37.12.010(8)), *appeal dismissed*, 397 U.S. 316 (1970); *Comenout v. Burdman*, 84 Wn.2d 192, 201, 525 P.2d 217 (1974) (pursuant to RCW 37.12.010(7), the State of Washington has jurisdiction to permanently deprive Indians residing on an Indian reservation of parental rights), *appeal dismissed*, 420 U.S. 915 (1975).

## COMMUNITY PROPERTY LAW

■ Under RCW 37.12.010(3), the State assumed full jurisdiction over Indians and Indian territory within the state in matters involving domestic relations. Washington domestic relations law is codified at RCW Title 26. Included within RCW Title 26 is Washington community property law. RCW 26.16. We, therefore, conclude when the Legislature passed RCW 37.12.010, it intended to grant jurisdiction to Washington courts to apply Washington community prop-

erty law to Indians and Indian territory within the state, which includes the authority to determine property rights as between an enrolled member of the Puyallup tribe and his non-enrolled wife.

■ This conclusion is supported by the recognition that the entire subject of domestic relations belongs to the laws of the states and not to the laws of the United States. *In re Burrus*, 136 U.S. 586, 593-94, 34 L. Ed. 500, 10 S. Ct. 850 (1890); *Hisquierdo v. Hisquierdo*, 439 U.S. 572, 581, 59 L. Ed. 2d 1, 99 S. Ct. 802 (1979); *Sheppard v. Sheppard*, 104 Idaho 1, 13-14, 655 P.2d 895 (1982) (the Idaho Supreme Court ruled Idaho Code § 67-5101, a statute similar to RCW 37.12.010, permits an Idaho state court in a divorce action between an Indian and non-Indian to adjudicate the status of their real and personal property under Idaho community property law).

■ Notwithstanding the plain language of RCW 37.12.010, Petitioner argues Washington domestic relations law does not apply to Indians and Indian territory. Petitioner cites to various federal statutes, the Medicine Creek treaty of 1854, the Oregon donation act of 1848, and article 4, section 1 of the United States Constitution for the proposition that Washington community property law cannot characterize the unincorporated business income earned by Silas Cross. Because these arguments are premised under federal law and go beyond the specific question certified to this court, we do not decide those issues. *Bird-Johnson Corp. v. Dana Corp.*, 119 Wn.2d 423, 425 n.1, 833 P.2d 375 (1992). In addition, the United States Tax Court, as trial court in this proceeding, must give "full force and effect" to tribal ordinances and customs, but only if those ordinances and customs are not inconsistent with Washington law. RCW 37.12-.070.[4] In this case, the United States Tax Court must make

---

[4]"Any tribal ordinance or custom heretofore or hereafter adopted by an Indian tribe, band, or community in the exercise of any authority which it may possess shall, if not inconsistent with any applicable civil law of the state, be given full force and effect in the determination of civil causes of action pursuant to this section." RCW 37.12.070. This statute mirrors the language of Public Law 280 (28 U.S.C. § 1360(c)).

a factual inquiry as to whether any tribal custom existed and if so whether the customs contradict or supplement Washington community property law.

## CONCLUSION

Public Law 280 permitted the State of Washington to assume civil and criminal jurisdiction over Indians and Indian territory. The Washington Legislature assumed full jurisdiction over Indians and Indian territory with respect to eight subject areas. Domestic relations is one of the eight subject areas where full jurisdiction was assumed. RCW 37.12.010(3). Community property law is included under domestic relations. RCW 26.16. Consequently, we answer the certified question in the affirmative and rule under RCW 37.12.010 that Washington community property law applies to determine property rights as between an enrolled member of the Puyallup Tribe and his non-enrolled wife.

UTTER, DOLLIVER, GUY, SMITH, JOHNSON, and MADSEN, JJ., and ANDERSEN and BRACHTENBACH, JJ. Pro Tem., concur.