[Nos. 36250-0-I; 35955-0-I. Division One. March 25, 1996.]

THE STATE OF WASHINGTON, *Respondent*, v. KIM E. COOPER, *Appellant*.

*Darby N. DuComb* of *Washington Appellate Project*, for appellant.

*David S. McEachran, Prosecuting Attorney*, and *Craig D. Chambers* and *Laura D. Hayes, Deputies*, for respondent.

AGID, J. — Kim Cooper appeals his conviction for one count of first degree child molestation. He argues that the trial court erred when it denied his motion to dismiss for lack of jurisdiction because the crime was committed by an Indian against an Indian in Indian country. Because the State failed to rebut Cooper's prima facie showing that the property on which the crime was committed was allotted trust land, we reverse and remand for dismissal without prejudice.

## FACTS

Cooper was charged by amended information with first degree child molestation in violation of RCW 9A.44.083.

The incident giving rise to the charge occurred at 5541 Rutsatz Road in Deming, Washington, and involved Cooper's daughter, who was less than 12 years old at the time. The parties agree that the property on which the incident occurred is not within the boundaries of the Nooksack Reservation itself. But Cooper contends that the property is allotted trust land. Both Cooper and the victim are members of the Nooksack Tribe.

Cooper pleaded guilty. Prior to sentencing, however, he moved to dismiss for lack of jurisdiction on the ground that the crime was committed by an Indian against an Indian in Indian country. If he is correct, the State lacked criminal jurisdiction to charge him with a crime. Cooper asserted that the property on which the crime occurred is allotted trust land and, therefore, Indian country for purposes of determining criminal jurisdiction. Because it regarded the trust status of the property immaterial to determining criminal jurisdiction, the trial court declined to rule on the issue. The court denied Cooper's motion and proceeded with sentencing. This appeal followed.[1]

### DISCUSSION

In 1948, Congress enacted the Indian Major Crimes Act providing for exclusive federal jurisdiction over certain listed crimes committed by Indians in "Indian country." *See* 18 U.S.C. § 1151. Sexual abuse of minors is included among the major crimes the Act covers. *United States v. Whitted*, 11 F.3d 782, 788 (8th Cir. 1993).

 States have no authority over Indians in Indian country unless it is expressly conferred by Congress. *See*

---

[1]This case is consolidated with another appeal arising out of the same proceeding. The notices of appeal also listed the trial court's denial of Cooper's motion to dismiss for lack of sufficient charging document and denial of his motion to dismiss guilty plea. In his brief, Cooper assigns error only to the trial court's ruling on his motion to dismiss for lack of jurisdiction and does not assign error to or argue any issues related to either of the other two orders. *See State v. Perry*, 120 Wn.2d 200, 202, 840 P.2d 171 (1992); RAP 10.3(g).

*Cheyenne-Arapaho Tribes v. Oklahoma*, 618 F.2d 665, 668 (10th Cir. 1980). In 1953, however, Congress enacted Public Law 280[2] giving certain states, including Washington, the option of assuming jurisdiction over criminal offenses in Indian country. Pursuant to Public Law 280, Washington amended RCW 37.12.010 in 1963, assuming partial nonconsensual jurisdiction over eight specific areas of the law in Indian country.[3] *See Washington v. Confederated Bands & Tribes of Yakima Indian Nation*, 439 U.S. 463, 471-74, 99 S. Ct. 740, 746-48, 58 L. Ed. 2d 740 (1979) (historical overview of the state's criminal jurisdiction over tribal members); *In re Estate of Cross*, 126 Wn.2d 43, 47, 891 P.2d 26 (1995) (history of Public Law 280). Washington declined to assume full criminal jurisdiction over Indians and Indian territory absent tribal consent, and RCW 37.12.021 requires tribal consent as a condition to the State's assumption of full criminal jurisdiction. The Indian Civil Rights Act of 1968 imposed a similar requirement on all future assumptions of civil and criminal jurisdiction by the states over Indians and Indian territory. *See* 25 U.S.C. § 1321, 1322.

▮ The Nooksack Tribe was formally recognized and its reservation established in 1973. *United States v. Washington*, 459 F. Supp. 1020, 1041 (W.D. Wash. 1978). The Nooksack Tribe is one of four tribes in Washington that have never elected to come under state jurisdiction. Because both 25 U.S.C. § 1321(a) and RCW 37.12.021 require tribal consent for the assumption of full criminal jurisdiction by the State and the Nooksack Tribe has not consented to that jurisdiction, the federal government retains criminal jurisdiction over major crimes committed by members of

---

[2]Pub. L. No. 280, 67 Stat. 588 (1953) (codified as amended at 18 U.S.C. § 1162, 25 U.S.C. §§ 1321-26, 28 U.S.C. § 1360).

[3]These are compulsory school attendance, public assistance, domestic relations, mental illness, juvenile delinquency, adoption proceedings, dependent children, and operation of motor vehicles on public roads. *See* RCW 37.12.010. The trial court apparently concluded that the State has jurisdiction based on this assumption of partial nonconsensual jurisdiction over these subject areas, presumably because they include dependent children.

the Nooksack Tribe in Indian country.[4] *See Confederated Bands & Tribes*, 439 U.S. at 498-99; *State v. Sohappy*, 110 Wn.2d 907, 910, 757 P.2d 509 (1988) (where tribes have not requested state jurisdiction over crimes by Indians, jurisdiction is shared by the tribal and federal governments).

The question thus becomes whether the land where the crime occurred is "Indian country" for purposes of 18 U.S.C. § 1153. "Indian country" is defined in the Indian Major Crimes Act to include

> (a) all land within the limits of any Indian reservation under the jurisdiction of the United States government, notwithstanding the issuance of any patent, and, including rights-of-way running through the reservation, (b) all dependent Indian communities within the borders of the United States whether within the original or subsequently acquired territory thereof, and whether within or without the limits of a state, and (c) all Indian allotments, the Indian titles to which have not been extinguished, including rights-of way running through the same.[5]

---

[4]The trial court relied in its oral opinion on the absence of a tribal court as a basis for determining that the State has jurisdiction:

> [I]n this case we know that Nooksack has no tribal court that could possibly convict this defendant of this charge here, and this [is] an extremely important factor, I think, relating to jurisdiction.
>
> So I'm absolutely convinced we have jurisdiction. Too many cases have gone by that have given us jurisdiction.

This demonstrates a fundamental misunderstanding of the jurisdictional scheme. Whether a Nooksack tribal court exists (references in the record to orders it issued reflect that it does) is immaterial because the federal government has asserted jurisdiction over major crimes committed in Indian country, and the crime here at issue is a major crime. Similarly, the fact that the court may have acted without jurisdiction in numerous other cases does not confer jurisdiction upon it in this case.

[5]The term "Indian allotment" refers to land owned by individual Indians and either held in trust by the United States or subject to a statutory restriction on alienation. F. COHEN, HANDBOOK OF FEDERAL INDIAN LAW ch. 1, § D3c, at 40 (1982). The great majority of Indian allotments was created pursuant to the General Allotment Act of 1887 (Dawes Act), which sought to implement a policy of assimilation by breaking up tribal lands previously held in common and allotting 160-acre parcels to individual Indians. The federal government later rescinded this policy, deciding that assimilation was not a good idea. F. COHEN, at 130-33, 147. Because most allotments were originally carved out of tribal

18 U.S.C. § 1151. *See also Cheyenne-Arapaho Tribes*, 618 F.2d at 667 (noting that 18 U.S.C. § 1151(c) explicitly includes Indian allotments within the definition of "Indian country"). Lands held in trust by the United States for Indian tribes or their members are also Indian country within the meaning of 18 U.S.C. § 1151. *Sohappy*, 110 Wn.2d at 911. *See also United States v. Sohappy*, 770 F.2d 816, 822 (9th Cir. 1985), *cert. denied*, 477 U.S. 906 (1986); *Langley v. Ryder*, 602 F. Supp. 335, 340 (W.D. La. 1985) (trust land located outside reservation boundaries has the same status as trust land located on a reservation for purposes of determining federal criminal jurisdiction because the critical factor is the trust status of the property and not its location) (citing *United States v. John*, 437 U.S. 634, 98 S. Ct. 2541, 57 L. Ed. 2d 489 (1978)).

Cooper contended below that the property on which the crime occurred is allotted trust land and thus Indian country for purposes of determining criminal jurisdiction. He set forth the factual basis for this contention in his memorandum filed in support of his motion to dismiss.[6] Because the trial court considered the trust status of the property immaterial to its determination, it expressly declined to rule on the issue. The trial court erred. As we have discussed above, the trust status of the property is

lands held in common, many still remain within current reservation boundaries. F. COHEN, at 40. 18 U.S.C. § 1151(c), however, does not require that allotment lands be located within the boundaries of a reservation. *See* F. COHEN, at 40. The definition of "Indian country" is a matter of federal, not state law. Thus, the State's reliance on *In re Somday*, 67 Wn.2d 180, 184, 406 P.2d 931 (1965), for its contention that allotments must "by definition" be located within reservation boundaries to qualify as Indian country is misplaced. *See Sohappy*, 110 Wn.2d at 909. The definition of "tribal lands" in *Somday* is simply inapposite to the matter at issue here.

[6]In the memorandum, Cooper explained:

"The property at 5541 Rutsatz Road was allotted to one Billy Willamot, a.k.a. Billy Williams, a member of the Nooksack Tribe of Indians and made under the provisions of the Act of July 4, 1884 (23 Stat. L. 96 for land described as Lots 7, 8, and 9, and the W1/2SE1/4, Section 5, township 38 North, Range 5 East, W.M., in Washington, containing 152.75 acres[)], trust patent issued December 11, 1891 in accordance with the Act of 1884, *supra*, in trust to the United States. The trust period was extended by Executive Order No. 2362 dated February 23, 1916 and Orders subsequent thereto, so that the land is still in trust."

critical. The question whether the State has criminal jurisdiction turns on whether the property is trust land or allotted land, i.e., whether it is Indian country for purposes of 18 U.S.C. §§ 1151, 1153.

By presenting prima facie proof that the property on which the crime is alleged to have occurred is allotted trust land, Cooper met his burden to contest jurisdiction, and it became the State's burden to show that it had jurisdiction. *See State v. L.J.M.*, 79 Wn. App. 133, 136, 141-42, 900 P.2d 1119, *review granted*, 128 Wn.2d 1002 (1995) (if a defendant contests jurisdiction, the State has the burden of proving beyond a reasonable doubt that jurisdiction does in fact rest with Washington courts) (citing *State v. Svenson*, 104 Wn.2d 533, 542, 707 P.2d 120 (1985)). While the State contends that it introduced evidence that the crime was committed outside "Indian country," there is no such evidence in the record.[7] Because it was the State's burden to show that it had jurisdiction once jurisdiction was contested, its failure to rebut Cooper's prima facie showing with any evidence that the property where the crime occurred was not trust land requires us to dismiss the underlying charge.[8] *See L.J.M.*, 79 Wn. App. at 144. The State failed to present proof in part because the trial court refused to reach the question of the trust status of the property. We therefore dismiss the information without prejudice.

Reversed and dismissed without prejudice.

COLEMAN and Cox, JJ., concur.

Review granted at 129 Wn.2d 1013 (1996).

---

[7]The material at the pages cited by the State to support its assertion that it introduced such evidence consists solely of argument, not evidence. As the *L.J.M.* court noted, it is a relatively simple matter to establish the trust status of a given piece of property. 79 Wn. App. at 137, 144.

[8]The State's argument that Cooper consented to jurisdiction when he pleaded guilty also fails since a party cannot stipulate to jurisdiction. *See Barnett v. Hicks*, 119 Wn.2d 151, 161, 829 P.2d 1087 (1992).