928 P.2d 406 (1996)
130 Wash.2d 770
The STATE of Washington, Petitioner,
v.
Kim E. COOPER, Respondent.
No. 64016-5.
Supreme Court of Washington, En Banc.
Argued September 24, 1996.
Decided December 19, 1996.
David S. McEachran, Whatcom County Prosecutor, Laura D. Hayes, Deputy, Whatcom County Prosecutor's Office, Bellingham, for Petitioner.
Darby N. Ducomb, David L. Donnan, Washington Appellate Project, Seattle, for Respondent.
Christine Gregoire, Attorney General, Robert K. Costello, Assistant Attorney General, Olympia, Katrina C. Pflaumer, U.S. Attorney, Susan M. Roe, Asst. U.S. Attorney, Seattle, for amici curiae.
DURHAM, Chief Justice.
The State seeks review of a Court of Appeals decision reversing Kim Cooper's conviction for child molestation. The State contends the Court of Appeals erred in concluding that the State lacks jurisdiction over crimes committed by Indians on Indian lands *407 outside the boundaries of an established Indian reservation. We agree, and reverse.

BACKGROUND
Cooper's crime was committed on property held in trust by the United States as an Indian allotment outside the boundaries of the Nooksack Reservation. State v. Cooper, 81 Wash.App. 36, 38, 41 n. 6, 912 P.2d 1075, review granted, 129 Wash.2d 1013, 917 P.2d 576 (1996).[1] The State no longer disputes Cooper's factual assertions that (1) the crime was committed on trust property, and (2) Cooper and the victim are both members of the Nooksack Tribe.[2] It is also undisputed that the trust property is "Indian country" for purposes of federal jurisdiction.[3]
Public Law 280
Prior to federal legislation permitting the assumption of state jurisdiction, criminal offenses by Indians in Indian country were subject to only federal or tribal jurisdiction. See Washington v. Confederated Bands & Tribes of the Yakima Indian Nation, 439 U.S. 463, 470, 99 S.Ct. 740, 746, 58 L.Ed.2d 740 (1979). In 1953, Congress enacted Public Law 280 permitting the states to assume jurisdiction over Indian country. Pub.L. No. 280, 67 Stat. 588 (codified as amended at 18 U.S.C. sec. 1162; 25 U.S.C. secs. 1321-1326; 28 U.S.C. sec. 1360) (1953). Public Law 280 gave five states criminal jurisdiction over all Indian country with the exception of three reservations. Public Law 280 gave the remaining states, including Washington, the consent of the United States to assume jurisdiction over Indian country by statute and/or amendment of their state constitutions. Confederated Bands & Tribes, 439 U.S. at 471-74, 99 S.Ct. at 746-48; In re Estate of Cross, 126 Wash.2d 43, 47, 891 P.2d 26 (1995).
Amended RCW 37.12.010 (1963)
In 1963, the Legislature amended RCW ch. 37.12, thereby asserting nonconsensual civil and criminal jurisdiction over all Indian country with certain exceptions.
The State of Washington hereby obligates and binds itself to assume criminal and civil jurisdiction over Indians and Indian territory, reservations, country, and lands within this state in accordance with [Public Law 280], but such assumption of jurisdiction shall not apply to Indians when on their tribal lands or allotted lands within an established Indian reservation and held in trust by the United States or subject to a restriction against alienation imposed by the United States, unless the provisions of RCW 37.12.021 have been invoked, except for the following:

(1) Compulsory school attendance;
(2) Public assistance;
(3) Domestic relations;
(4) Mental illness;
(5) Juvenile delinquency;
(6) Adoption proceedings;
(7) Dependent children; and
*408 (8) Operation of motor vehicles upon the public streets, alleys, roads and highways....
RCW 37.12.010 (emphasis added). The effect of this statute was to assume jurisdiction over all Indian country for purposes of the eight enumerated categories of law. Confederated Bands & Tribes, 439 U.S. at 475, 99 S.Ct. at 748; Estate of Cross, 126 Wash.2d at 48, 891 P.2d 26. Criminal jurisdiction was not one of the eight categories of law in which the State assumed jurisdiction over all Indian country. Whether the State assumed criminal jurisdiction over a particular piece of Indian country depends on whether the property constitutes "tribal lands or allotted lands within an established Indian reservation." RCW 37.12.010 (emphasis added).[4] RCW 37.12.021, enacted in the same legislation as RCW 37.12.010, authorized further assumptions of state jurisdiction pursuant to tribal consent.
The Indian Civil Rights Act of 1968
The Indian Civil Rights Act of 1968 (hereafter 1968 ICRA), 25 U.S.C. secs. 1321-1323, required tribal consent for all future assumptions of state jurisdiction over Indian country. The 1968 ICRA did not make the consent requirement retroactive and did not invalidate prior assumptions of state jurisdiction under Public Law 280. Estate of Cross, 126 Wash.2d at 47, 891 P.2d 26 (citing Three Affiliated Tribes v. Wold Eng'g, P.C., 467 U.S. 138, 150-51, 104 S.Ct. 2267, 2275-76, 81 L.Ed.2d 113 (1984)).
The Nooksack Reservation
The Nooksack Reservation was established in 1973.[5] The Nooksack Tribe has not consented to the assumption of state jurisdiction. Cooper, 81 Wash.App. at 39, 912 P.2d 1075.

ANALYSIS
The question of state jurisdiction depends first on whether the State initially assumed jurisdiction over the trust property pursuant to RCW 37.12.010. If it did, the question then becomes whether the subsequent establishment of the Nooksack Reservation vitiates that assumption of jurisdiction. We consider each issue separately.
A. Pursuant to RCW 37.12.010, Washington assumed jurisdiction over all Indian lands outside established reservations, including the trust property at issue here.
By enacting the 1963 version of RCW 37.12.010, Washington assumed state jurisdiction over all Indian country with respect to the eight categories of law enumerated in RCW 37.12.010. Estate of Cross, 126 Wash.2d at 47, 891 P.2d 26. Washington also assumed full nonconsensual civil and criminal jurisdiction over all fee lands within Indian reservations. See State v. L.J.M., 129 Wash.2d 386, 395, 918 P.2d 898 (1996) (state has criminal jurisdiction within the Colville Indian reservation unless evidence establishes that the crime occurred on trust property); In re Somday v. Rhay, 67 Wash.2d 180, 184, 406 P.2d 931 (1965); State v. Pierre, 66 Wash.2d 703, 404 P.2d 788 (1965); State v. Flett, 40 Wash.App. 277, 699 P.2d 774 (1985). Finally, Washington assumed full nonconsensual civil and criminal jurisdiction over all Indian country outside established Indian reservations. Allotted or trust lands are not excluded from full nonconsensual state jurisdiction unless they are "within an established Indian reservation." RCW 37.12.010.
The most significant feature of the [amended RCW 37.12.010] was its provision for the extension of at least some *409 jurisdiction over all Indian lands within the State, whether or not the affected tribe gave its consent. Full criminal and civil jurisdiction to the extent permitted by Pub.L. 280 was extended to all fee lands in every Indian reservation and to trust and allotted lands therein when non-Indians were involved....
....
... On trust and restricted lands within the reservations whose tribes have not requested the coverage of state law, jurisdiction over crimes by Indians is, as it was when Pub.L. 280 was enacted, shared by the tribal and Federal Governments.
Confederated Bands & Tribes, 439 U.S. at 475, 498-99, 99 S.Ct. at 748, 760 (emphasis added).
Because the Nooksack reservation did not exist in 1963, the State's assumption of jurisdiction pursuant to RCW 37.12.010 necessarily included the trust property on which Cooper committed his crime. The 1968 ICRA did not revoke this assumption of state jurisdiction. Therefore, unless the subsequent establishment of the Nooksack Reservation somehow vitiates this assumption of jurisdiction, the State continues to exercise jurisdiction over the trust property.
State v Sohappy
Cooper contends the State's interpretation of "reservation" is too narrow, and that, for purposes of RCW 37.12.010, "reservation" means all lands held in trust by the United States for the benefit of Indians. This argument is largely based on State v. Sohappy, 110 Wash.2d 907, 757 P.2d 509 (1988). In Sohappy, a member of the Yakima Indian Nation was convicted in state court for assaulting non-Indian police officers at an "in-lieu" fishing site. The in-lieu site was created under federal law to replace Indian fishing grounds destroyed by the Bonneville Dam. Title to the in-lieu site was held by the United States for the benefit of the Yakima Nation and other Indian tribes. Sohappy, 110 Wash.2d at 908, 757 P.2d 509. The defendant challenged the assertion of state jurisdiction over the site.
The question is whether this in-lieu site is within the category described in RCW 37.12.010 over which the State has not asserted jurisdiction. Specifically, was the defendant on tribal lands or allotted lands within an established Indian reservation and held in trust by the United States, the delimiting language of the statute?
Sohappy, 110 Wash.2d at 909-10, 757 P.2d 509. Although the in-lieu site was not within the original boundaries of the Yakima Reservation itself, this court held that the site was "within an Indian reservation" for purposes of RCW 37.12.010. Sohappy, 110 Wash.2d at 911, 757 P.2d 509. This holding was based on a federal case involving the same in-lieu site.
In United States v. Sohappy, 770 F.2d 816 (9th Cir.1985), cert. denied, 477 U.S. 906, 106 S.Ct. 3278, 91 L.Ed.2d 568 (1986), 13 Indian defendants were prosecuted under federal law for various fishing violations at the in-lieu site. The federal court was asked to determine whether the offenses were committed in "Indian country" for purposes of federal criminal jurisdiction. Observing that the in-lieu site was held in trust by the United States, the federal court held that the site was in "Indian country" for purposes of 18 U.S.C. sec. 1151. Sohappy, 770 F.2d at 822-23. The federal court was not interpreting RCW 37.12.010 and its decision never mentions that statute.
This court expressly disavowed any broad interpretation of its reliance on the federal decision in this court's Sohappy opinion.
At the outset we note two points: (1) Our holding is narrowly limited to the in-lieu site here involved. We so restrict our holding because of the Ninth Circuit decision upon which we rely, cited hereafter. (2) The State's 4-page brief is of no use to this court. It cites not a single case.
Sohappy, 110 Wash.2d at 909, 757 P.2d 509. Cooper ignores this disclaimer and his briefs never mention the federal Sohappy decision. Instead, Cooper relies on this court's opinion in Sohappy for the proposition that we have rejected the distinction between "Indian country" and "reservation" for purposes of RCW 37.12.010. Sohappy does not, as Cooper suggests, hold that "reservation" includes all lands held in trust for the benefit of *410 Indians. The court's holding is clearly limited to the in-lieu fishing site in question. As the State points out, Cooper's interpretation would render the phrase "within an established Indian reservation" totally meaningless. If the term "reservation" in RCW 37.12.010 included all Indian lands outside the formal boundaries of established reservations, then the exception would swallow the rule.
Federal definitions of "reservation"
Cooper also cites Sohappy for the proposition that this court should look to federal precedent interpreting the term "reservation." There are several problems with this approach. The federal cases cited by Cooper are concerned with the definition of "Indian country" for purposes of federal jurisdiction. While some federal cases use the terms "Indian country" and "reservation" interchangeably, other cases clearly indicate that they are not the same thing. See Tooisgah v. United States, 186 F.2d 93, 98 (10th Cir.1950). Furthermore, when RCW 37.12.010 was amended in 1963, Public Law 280 gave Washington the authority to assume nonconsensual civil and criminal jurisdiction over all Indian country in the state if the Legislature so chose. Therefore, a determination of whether the 1963 version of RCW 37.12.010 asserted state jurisdiction over particular Indian lands (or over particular areas of law) presents a question of state law. Federal interpretations of the term "reservation" for purposes of federal jurisdiction are not helpful where, as here, reliance on such interpretations would render the plain language of RCW 37.12.010 meaningless.
Oklahoma Tax Comm'n v. Citizen Band Potawatomi Indian Tribe of Okla., 498 U.S. 505, 111 S.Ct. 905, 112 L.Ed.2d 1112 (1991), relied on by Cooper, is inapplicable. In that case, the Supreme Court rejected a distinction between trust lands and "reservations" for purposes of whether property was in Indian country. An Indian tribe challenged Oklahoma's authority to impose sales taxes on cigarettes sold at a store on trust land. Oklahoma had not asserted state jurisdiction over Indian country pursuant to Public Law 280. Nevertheless, the State argued that it had jurisdiction because the store was not within a formally established "reservation." The Supreme Court disagreed. "[T]he test for determining whether land is Indian country does not turn upon whether that land is denominated `trust land' or `reservation.' "Potawatomi Indian Tribe, 498 U.S. at 511, 111 S.Ct. at 910 (emphasis added) (citing United States v. John, 437 U.S. 634, 648-49, 98 S.Ct. 2541, 2548-49, 57 L.Ed.2d 489 (1978)). Unlike Oklahoma, Washington has assumed jurisdiction over Indian country pursuant to Public Law 280. The issue is not whether Cooper's crime was committed in "Indian country" for purposes of federal jurisdiction, but whether it was committed "within an established Indian reservation" for purposes of RCW 37.12.010.
Other cases relied on by Cooper are distinguishable. In re Wesley v. Schneckloth, 55 Wash.2d 90, 346 P.2d 658 (1959) was decided before the 1963 amendments to RCW 37.12.010 and involved a crime committed by an Indian within the boundaries of the Yakima Indian Reservation. DeCoteau v. District County Ct. for the Tenth Judicial Dist., 420 U.S. 425, 95 S.Ct. 1082, 43 L.Ed.2d 300 (1975) and United States v. Sands, 968 F.2d 1058, 1062, (10th Cir.1992), cert. denied, 506 U.S. 1056, 113 S.Ct. 987, 122 L.Ed.2d 139 (1993) involved the issue of whether particular lands were in "Indian country" for purposes of federal jurisdiction.
B. The subsequent establishment of the Nooksack Reservation does not vitiate the State's pre-existing assumption of jurisdiction over Indian lands outside the Nooksack Reservation.
The Court of Appeals misconstrued the 1968 ICRA and RCW 37.12.021 and concluded that these statutes required Nooksack consent for the assumption of state jurisdiction over members of the Nooksack Tribe in any part of Indian country. RCW 37.12.021 was enacted as part of the same 1963 legislation as the assumption of partial nonconsensual jurisdiction in RCW 37.12.010 (amended) and those provisions must be interpreted harmoniously. RCW 37.12.021 does not limit the assumption of partial nonconsensual jurisdiction in RCW 37.12.010. Rather, RCW 37.12.021 authorizes additional assumptions *411 of state jurisdiction within Indian reservations pursuant to tribal consent. Only the assumption of full civil and criminal jurisdiction over tribal and allotted lands within an established Indian reservation requires the consent of the affected tribe under RCW 37.12.021. Similarly, the 1968 ICRA requires tribal consent for all future assumptions of state court jurisdiction. 25 U.S.C. sec. 1321(a). However, the 1968 ICRA did not revoke pre-existing state jurisdiction. Estate of Cross, 126 Wash.2d at 47, 891 P.2d 26.
Cooper's argument that Nooksack consent is required for state jurisdiction is based on the incorrect assumption that such property is part of the Nooksack Tribe's "reservation" for purposes of RCW 37.12.010. The secondary authority relied on by Cooper in support of this argument clearly states that tribal consent is necessary only where the trust property at issue is within the formal boundaries of an established Indian reservation.
If a tribe has not requested or consented to the assumption of state jurisdiction, the title status [of] the property where the offense was committed determines state authority to prosecute. If the property is tribal or allotted land within the reservation and is either held in trust by the United States or subject to a restriction against alienation imposed by the United States, the Washington courts do not have jurisdiction.
Pamela B. Loginsky, Criminal Jurisdiction Issues, in Washington State Bar Ass'n, Continuing Legal Educ. Comm. & Indian Law Section, Perspectives on Indian Law, at 4-7 (Apr. 10, 1992) (emphasis added). Assuming, arguendo, that the subsequent establishment of the Nooksack Reservation vitiates the preexisting RCW 37.12.010 assumption of state jurisdiction with respect to tribal and allotted lands within the boundaries of the new reservation, Cooper has no authority for the proposition that the consent of the Nooksack Tribe is necessary for continuing state jurisdiction over Indian lands outside the reservation.[6] The consent provision in RCW 37.12.021 applies only to Indian lands not otherwise subject to state jurisdiction under RCW 37.12.010. Therefore, Nooksack consent is not necessary for the continuing exercise of state jurisdiction over trust lands outside the boundaries of the Nooksack Reservation.
Reversed.
DOLLIVER, SMITH, GUY, JOHNSON, MADSEN, ALEXANDER, TALMADGE and SANDERS, JJ., concur.
NOTES
[1] Trust parcels or Indian allotments are lands belonging to individual Indians and either held in trust by the United States or subject to restrictions on alienation. Such lands may or may not be located within the boundaries of an established Indian reservation. State v. Cooper, 81 Wash.App. 36, 40 n. 5, 912 P.2d 1075, review granted, 129 Wash.2d 1013, 917 P.2d 576 (1996).
[2] Because it is undisputed that Cooper's crime was committed on Indian land outside the formal boundaries of the Nooksack Reservation, and because the State's petition for review raises only the legal issue of whether the State has criminal jurisdiction over such property, the parties' respective burdens to establish or contest jurisdiction are not at issue. See State v. L.J.M., 129 Wash.2d 386, 918 P.2d 898 (1996).
[3] 18 U.S.C. § 1151 defines Indian country for purposes of federal jurisdiction: "`Indian country', as used in this chapter, means (a) all land within the limits of any Indian reservation under the jurisdiction of the United States Government, notwithstanding the issuance of any patent, and, including rights-of-way running through the reservation, (b) all dependent Indian communities within the borders of the United States whether within the original or subsequently acquired territory thereof, and whether within or without the limits of a state, and (c) all Indian allotments, the Indian titles to which have not been extinguished, including rights-of-way running through the same."
[4] Because lands held in fee are not lands "held in trust by the United States or subject to a restriction against alienation imposed by the United States," RCW 37.12.010 effected an assumption of state jurisdiction over fee lands within Indian reservations. Washington v. Confederated Bands & Tribes of the Yakima Indian Nation, 439 U.S. 463, 475, 99 S.Ct. 740, 748, 58 L.Ed.2d 740 (1979).
[5] "The Nooksack reservation was established pursuant to section 7 of the Indian Reorganization Act of June 18, 1934(48 Stat. 986, 25 U.S.C. § 467) by proclamation of the Acting Secretary of the Interior dated March 22, 1973. The Nooksack Indian Tribe of Washington is organized pursuant to section 16 of said Indian Reorganization Act, 48 Stat. 987, 25 U.S.C. § 476." United States v. Washington, 459 F.Supp. 1020, 1041 (W.D.Wash.), appeal dismissed, 573 F.2d 1117 (9th Cir.1978), aff'd, 645 F.2d 749 (9th Cir.1981).
[6] We assume, without deciding, that the subsequent establishment of a new Indian reservation vitiates the pre-existing RCW 37.12.010 assumption of state jurisdiction with respect to Indian lands within the boundaries of the new reservation.

Four reservations were formed after 1968, and their membership never elected to come under state jurisdiction. The Jamestown-Klallam, Nooksack, Sauk Suiattle and Upper Skagit reservations are not subject to RCW 37.12.010. The land that was acquired and incorporated into the Squaxin Island Reservation between 1974 and 1976 might not be subject to RCW 37.12.010 because the Squaxin Island Tribe has not consented to state jurisdiction over these lands.
Loginsky, supra, at 4-8. See State v. Squally, 81 Wash.App. 685, 691-92, 915 P.2d 1151, review granted, 130 Wash.2d 1007 (1996) (notwithstanding the 1957 assumption of jurisdiction over then existing Nisqually Indian Reservation pursuant to tribal request, the State lacks jurisdiction over lands subsequently added to the reservation in the absence of new tribal request).