230 P.3d 1080 (2010)
STATE of Washington, Respondent,
v.
Lester Ray JIM, Appellant.
No. 28079-9-III.
Court of Appeals of Washington, Division 3.
May 11, 2010.
*1081 Thomas Andrew Zeilman, Law Offices of Thomas Zeilman, Yakima, WA, for Petitioner.
Michael S. Grossmann, Atty. Gen. Ofc. Fish & Wildlife Division, Olympia, WA, for Respondent.
BROWN, A.C.J.
¶ 1 Lester R. Jim, an enrolled member of the Yakama Nation, appeals a superior court decision reversing the district court's dismissal of his fishing citations for lack of jurisdiction over the Maryhill Treaty Fishing Access Site (MTFAS). This court granted Mr. Jim discretionary review. We reverse the superior court because the State of Washington lacks jurisdiction to cite Mr. Jim at the MTFAS.

FACTS
¶ 2 The MTFAS is located in Klickitat County in Indian Country. While it is not on an Indian reservation, the site was acquired for the Indians use and benefit "in-lieu" of treaty fishing grounds submerged or destroyed by dam construction on the Columbia River. Sohappy v. Hodel, 911 F.2d 1312, 1315 (9th Cir.1990). On June 25, 2008, Mr. Jim, an enrolled member of the Yakama Nation was commercially fishing on the Columbia River. After he docked his boat at the MTFAS, Washington Department of Fish and Wildlife officers approached him. An officer cited Mr. Jim for second degree unlawful use of a net and retaining undersized sturgeon. Mr. Jim pleaded not guilty and successfully requested dismissal on jurisdictional grounds. The State successfully appealed to the superior court. This court granted discretionary review.

ANALYSIS
¶ 3 The issue is whether the State has criminal jurisdiction over an enrolled member of the Yakama Nation for fishing violations allegedly occurring at the MTFAS.
*1082 ¶ 4 "RALJ 9.1 governs appellate review of a superior court decision reviewing a decision of a district court." State v. Brokman, 84 Wash.App. 848, 850, 930 P.2d 354 (1997). We review the district court's decision to determine whether that court committed any errors of law, accepting its factual determinations that are supported by substantial evidence and reviewing alleged errors of law de novo. RALJ 9.1. Because jurisdiction is a matter of law, we review such issues de novo when the location of a crime is not in dispute. State v. Eriksen, 166 Wash.2d 953, 959, 216 P.3d 382 (2009).
¶ 5 "Treaties, agreements, and statutes must be liberally construed in favor of the tribe, and all ambiguities are to be resolved in its favor." Id. (citing Choctaw Nation of Indians v. United States, 318 U.S. 423, 431-32, 63 S.Ct. 672, 87 L.Ed. 877 (1943)). In 1855, several treaties were negotiated with Pacific Northwest Indian tribes for the setting aside of land for Indian reservations. Sohappy, 911 F.2d at 1314. Some of this land was lost with the subsequent building of dams along the Columbia River. Id. at 1315. The Maryhill site resulted from congressional legislation authorizing the acquisition of lands to provide facilities in Washington to replace Indian fishing grounds submerged or destroyed by the construction of dams. State v. Sohappy, 110 Wash.2d 907, 908, 757 P.2d 509 (1988). The use of these sites is limited to tribal members; indeed, "it is unlawful for a person who is not a treaty Indian fisherman to participate in the taking of fish or shellfish in a treaty Indian fishery." RCW 77.15.570(1).
¶ 6 Public Law 280 allows states, with the consent of a tribe, to extend state jurisdiction over matters involving tribal members and arising on Indian reservations. Washington has limited its jurisdiction, however, by not retaining jurisdiction over "Indians when on their tribal lands or allotted lands within an established Indian reservation and held in trust by the United States." RCW 37.12.010.
¶ 7 In State v. Sohappy, our Supreme Court examined whether a different treaty site was exempt from our State's jurisdiction as though it was a reservation site. The Court held the State did not have jurisdiction for criminal prosecution of an enrolled Yakima Nation member for assaults committed at the treaty site. 110 Wash.2d at 911, 757 P.2d 509. The court wrote, "Our holding is narrowly limited to the in-lieu site here involved." Id. at 909, 757 P.2d 509. The court limited its holding partly relying on a Ninth Circuit case that specifically stated that the fishing site in question was considered part of an Indian reservation. Id. at 909, 757 P.2d 509 (referring to United States v. Sohappy, 770 F.2d 816 (9th Cir.1985)).
¶ 8 In United States v. Sohappy, the Ninth Circuit held the Cooks Landing fishing site amounted to "reservation land" for jurisdictional purposes. 770 F.2d at 823. Relying on United States v. John, 437 U.S. 634, 649, 98 S.Ct. 2541, 57 L.Ed.2d 489 (1978) and United States v. Pelican, 232 U.S. 442, 449, 34 S.Ct. 396, 58 L.Ed. 676 (1914), the Ninth Circuit reasoned that when land is declared by Congress to be for the benefit of the Indians it is a reservation for the purposes of federal criminal jurisdiction. Id. at 822.
¶ 9 The court's holding in State v. Sohappy was limited to a particular in-lieu fishing site. State v. Cooper, 130 Wash.2d 770, 928 P.2d 406 (1996). The Cooper court explained, "[State v.] Sohappy does not, as Cooper suggests, hold that `reservation' includes all lands held in trust for the benefit of Indians." Id. at 778, 928 P.2d 406. In Cooper, a Nooksack Indian was prosecuted under state law for child molestation on a trust allotment not part of any congressionally established Indian off-reservation fishing site. Cooper, 130 Wash.2d at 772, 928 P.2d 406. Compared to the facts in Mr. Jim's case, the land in Cooper was not subject to exclusive use by Indian tribes for a particular purpose mandated by Congress and reserved by treaties. Language used by the Washington Supreme Court, "must always be appraised in the light of the facts of the particular case and the specific issues which were before the court." Johnson v. Ottomeier, 45 Wash.2d 419, 421, 275 P.2d 723 (1954).
¶ 10 Mr. Jim offers persuasive arguments. Regarding the use of Columbia River treaty fishing access sites, the Federal Register states the Bureau of Indian Affairs, "agreed that the States do not have regulatory *1083 jurisdiction or authority over the in-lieu fishing sites." 62 FR 50867-01 (Sept. 29, 1997). Furthermore, as discussed above, an 1855 treaty reserved Yakama Nation fishing rights at off-reservation sites. Treaty with the Yakamas, art. III, 12 Stat. 951, 953 (1855). The federal government acquired access sites for the Yakama Nation (and three other tribes) at those usual and accustomed fishing areas to replace treaty recognized areas submerged by dam construction. While the MTFAS is not on Yakama reservation land, it is in Indian country and, we conclude the MTFAS is entitled to reservation status.
¶ 11 While State v. Sohappy merits a narrow construction, we reason that court did not intend no other treaty site could ever be exempt from State criminal jurisdiction under our facts. Considering, that our case is distinguished from Cooper and is more like the state and federal Sohappy cases, we hold the State does not have jurisdiction to prosecute Mr. Jim for fishing violations at the MTFAS. Accordingly, the superior court erred when reversing the dismissal entered by the district court. So holding, we do not reach Mr. Jim's additional argument that fishing, in general, is a protected activity.
¶ 12 Reversed.
WE CONCUR: SWEENEY and KORSMO, JJ.