[No. 85067-4.   En Banc.]
Argued June 30, 2011.    Decided December 8, 2011.

THE STATE OF WASHINGTON, *Respondent*, v. ROBERT REGINALD
COMENOUT, SR., ET AL., *Petitioners*.

236

*Randal B. Brown* (of *Randal Brown Law Office*); *Robert E. Kovacevich* (of *Robert E. Kovacevich PLLC*); and *Aaron L. Lowe* (of *Aaron L. Lowe & Associates*), for petitioners.

*Mark E. Lindquist, Prosecuting Attorney*, and *Kathleen Proctor* and *Thomas C. Roberts, Deputies*, for respondent.

*Robert M. McKenna, Attorney General, David M. Hankins, Senior Counsel*, and *Heidi A. Irvin, Assistant*, on behalf of Washington State Department of Revenue and Washington State Liquor Control Board, amici curiae.

¶1 ALEXANDER, J. — The primary issue presented by this case is whether the State of Washington has jurisdiction over members of Indian tribes who sell unstamped cigarettes without a license at a store that is located on trust allotment land that is outside the boundaries of an Indian reservation. We conclude that the State does possess jurisdiction in such cases, and, thus, we affirm the trial court's denial of the motion of the defendants herein to dismiss the charges against them.

¶2 In 2007 and 2008, agents of the Washington State Liquor Control Board purchased cigarettes from the "Indian Country Store" in Puyallup. The cigarette cartons and packs that were purchased did not contain Washington or tribal tax stamps. Consequently, in July 2008 agents went to the store again, this time armed with a search warrant. On that occasion, they seized 37,000 cartons of unstamped cigarettes. The unpaid taxes on these cigarettes are alleged to be $750,000.

¶3 The owner of the Indian Country Store at the time was Edward Comenout, an enrolled member of the Quinault Indian Nation. His brother, Robert Comenout Sr., and his nephew, Robert Comenout Jr., were engaged in running the store on a daily basis. Robert Sr. is an enrolled member of the Tulalip Tribes and Robert Jr. is an enrolled member of the Yakama Nation. The Indian Country Store, despite its name, is not on an Indian reservation. Rather, it is located on two trust allotments outside the boundary of any reservation. Broadly speaking, though, the store is within "Indian country."

¶4 The State charged all three Comenouts in Pierce County Superior Court with (1) engaging in the business of purchasing, selling, consigning, or distributing cigarettes without a license; (2) unlawful possession or transportation of unstamped cigarettes; and (3) first degree theft. Edward, who was the alleged principal, moved to dismiss on grounds that the State lacked jurisdiction. He was joined in the motion by his alleged accomplices, Robert Sr. and Robert Jr.

¶5 The superior court denied the motions. The Comenouts then sought discretionary review at the Court of Appeals. While the matter was at that court, Edward Comenout died. Consequently, the Court of Appeals granted a motion dismissing him as a defendant. That court then certified the case to us and our commissioner granted review. The attorney general has filed an amicus brief on behalf of the Washington State Department of Revenue and the Washington State Liquor Control Board.

¶6 By way of background, we note that in 2005 Edward's tribe, the Quinault Indian Nation, and the State of Washington entered into a cigarette tax compact applicable to the retail sale of cigarettes by "tribal retailers." The compact requires "a member-owned smokeshop located in Indian country" to be licensed by the tribe. Clerk's Papers (CP) at 370. The Indian Country Store is not licensed by the Quinault Indian Nation or any other tribe.

¶7 This case presents two primary issues. The first is: does the State of Washington have criminal jurisdiction over tribal members selling unstamped cigarettes from an unlicensed store located on trust allotment property lying outside the borders of an Indian reservation?

¶8 As a general rule, "[s]tates . . . lack . . . criminal jurisdiction over Indians within Indian country, absent federal legislation specifying to the contrary." FELIX S. COHEN, COHEN'S HANDBOOK OF FEDERAL INDIAN LAW § 6.04[1], at 537 (2005). Significantly, Congress enacted a law in 1953, Public Law 280, which authorized Washington among a few other states to assume jurisdiction over Indian country "by statute" without the consent of the tribe. Pub. L. No. 280, 67 Stat. 588 (1953) (codified as amended at 18 U.S.C. § 1162; 25 U.S.C. §§ 1321-1326; 28 U.S.C. § 1360). In 1963, in response to that act of Congress, Washington amended a preexisting statute, RCW 37.12.010, and asserted full criminal jurisdiction, with a few exceptions not relevant to this case, over all Indian country outside established Indian reservations.

¶9 In 1996, this court had before it a case with facts very similar to those in the instant. *State v. Cooper*, 130 Wn.2d 770, 928 P.2d 406 (1996). There we upheld Kim Cooper's conviction on a charge of child molestation, despite the fact that the defendant, Cooper, was a member of a recognized Indian tribe and the location of the alleged crime was on allotted trust land lying outside the boundaries of an Indian reservation. In reaching our decision, we referenced the aforementioned amendment to RCW 37.12.010 and said that by this amendment, Washington assumed full

nonconsensual "criminal jurisdiction over all Indian country outside established Indian reservations." *Cooper*, 130 Wn.2d at 775-76. We went on to conclude that "[a]llotted or trust lands are not excluded from full nonconsensual state jurisdiction unless they are 'within an established Indian reservation.' " *Id.* at 776 (quoting RCW 37.12.010). Cooper had contended that the State's interpretation of "reservation" was too narrow, citing this court's decision in *State v. Sohappy*, 110 Wn.2d 907, 757 P.2d 509 (1988). *Id.* In *Sohappy* we concluded that the State did not have jurisdiction over an "in-lieu" fishing site that was created under federal law to replace Indian fishing grounds developed by construction of the Bonneville Dam. We indicated there that the site was within an Indian reservation for purposes of RCW 37.12.010. *Id.* at 911. We said, however, that the *Sohappy* decision was not to be broadly interpreted and that our decision was limited to the in-lieu site involved in that case.

¶10 In our view, our decision in *Cooper* controls the outcome here. Although the Comenouts' attempt to distinguish this case from *Cooper*, their effort fails because the cases they cite, including the one on which they rely most heavily, *State v. Pink*, 144 Wn. App. 945, 185 P.3d 634 (2008), are cases where the alleged criminal activity occurred within the boundaries of an Indian reservation.

¶11 The Comenouts assert that the State gave up the jurisdiction it once had. In support of this argument, they point out that in 1958 the Quinault Indian Nation reservation requested that the State of Washington extend its criminal and civil jurisdiction to include the Quinault Indian Nation and the reservation and that in response our state's then-governor extended state jurisdiction to the reservation by proclamation. In 1965, however, the Quinault Indian Nation petitioned for retrocession of state jurisdiction and the United States accepted the request.

¶12 The Comenouts fail to mention, though, that the jurisdiction exercised by the State over the tribe pursuant

to the 1963 statutory amendment, RCW 37.12.010 through .060, was excepted from the retrocession. Consequently, the State's jurisdiction over cases like this was unaffected. Significantly, the Secretary of the Interior's order makes this clear. Am. Opening Br. of Appellants at App. 3.

¶13 The other issue in the case is whether the Comenouts are exempt from the state cigarette tax as "Indian retailers." RCW 82.24.295(1) provides that the state cigarette tax does not apply to the "sale, use, consumption, handling, possession, or distribution of cigarettes by an Indian retailer during the effective period of a cigarette tax contract subject to RCW 43.06.455." An "Indian retailer" includes "a business owned and operated by the Indian person or persons in whose name the land is held in trust." RCW 43.06.455(14)(b). The Comenouts contend that their Puyallup store meets the definition of "Indian retailer" and that because the possession of the cigarettes occurred between the effective period of the cigarette tax compact between Washington and the Quinault Indian Nation, Washington's tax does not apply.

¶14 The flaw in their argument is that RCW 82.24-.020(5) says that if the State "enters into a cigarette tax contract or agreement with a federally recognized Indian tribe . . . , the terms of the contract or agreement take precedence over any conflicting provisions of this chapter while the contract or agreement is in effect." Significantly, the Quinault Indian Nation cigarette tax compact applies to the sale of cigarettes by "tribal retailers." The term "tribal retailers" is more limited than the statutory definition of "Indian retailer" in that it defines a "tribal retailer" as a "member-owned smokeshop located in Indian country and licensed by the Tribe." CP at 370. As we observed above, the Indian Country Store was not licensed by the tribe. Thus, while the Comenouts meet the definition of "Indian retailer" they do not meet the definition of "tribal retailer."

¶15 In sum, the Comenouts are not exempt from Washington's cigarette tax. Because RCW 82.24.110 and .500

criminalize the possession of unstamped cigarettes and the unlicensed sale of cigarettes, the trial court correctly denied the motion to dismiss the charges. The case should proceed to trial.

MADSEN, C.J.; C. JOHNSON, CHAMBERS, OWENS, FAIRHURST, STEPHENS, and WIGGINS, JJ.; and COX, J. PRO TEM., concur.