2016 AUG -3　A 9: 33



# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| ROBERT REGINALD COMENOUT, SR.,† | ) | No. 74842-4-I |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| EDWARD COMENOUT and ESTATE OF EDWARD COMENOUT, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WASHINGTON STATE LIQUOR CONTROL BOARD, | ) | UNPUBLISHED OPINION |
| | ) | |
| | ) | FILED: August 8, 2016 |
| Respondent. | ) | |

VERELLEN, C.J. — In State v. Comenout,[1] our Supreme Court upheld the State's exercise of nonconsensual criminal jurisdiction over tribal members selling unstamped cigarettes from an unlicensed store located on trust allotment property lying outside the borders of an Indian reservation.

Edward Comenout challenges that decision in this administrative forfeiture action appeal arising out of the same seized cigarettes at issue in Comenout. He claims Comenout is not binding because the case was remanded and ultimately

---

† Robert Comenout was not a party in the superior court's review of this matter and is not a party in this appeal. See Clerk's Papers (CP) at 1231 n.1.

[1] 173 Wn.2d 235, 267 P.3d 355 (2011).

dismissed. But we are bound by that decision unless and until the Washington Supreme Court or the United States Supreme Court rules otherwise. Neither court has done so. And under Comenout, it is clear the State court had personal and subject matter jurisdiction in this administrative forfeiture action and that Comenout is not exempt from the State's cigarette tax as an "Indian retailer."

Because Comenout fails to establish any error of law or arbitrary and capricious action under the Administrative Procedure Act[2] (APA) standards, we affirm.

## FACTS

In July 2008, Quinault tribal police and Puyallup police assisted the Washington State Liquor Control Board (Board)[3] execute a search warrant at the Indian Country Store in Puyallup. The Board seized 376,852 packs of cigarettes. None of the cigarettes had valid Washington or Quinault Indian Nation tobacco stamps affixed to them.

The store's owner at the time was Edward Comenout, an enrolled member of the Quinault Indian Nation. He ran the store with his brother, an enrolled member of the Tulalip Tribe. The store is located on two trust allotments. Comenout's trust allotments are not within any Indian reservation, but they are within "Indian country."

At the time the cigarettes were seized, the Quinault Indian Nation and the State of Washington had a cigarette tax compact in force. The compact was entered

---

[2] Ch. 34.05 RCW.
[3] Currently, the Washington State Liquor and Cannabis Board.

into in 2005 and applies "to the retail sale of cigarettes by tribal retailers."[4] It requires "a member-owned smokeshop located in Indian country" to be licensed by the tribe.[5]

Comenout was licensed by the Quinault Indian Nation Department of Revenue to operate the store on his land at the time of the seizure. The business license required him to comply with all Quinault Indian Nation laws and regulations. The license did not authorize the sale of tobacco products.

In August 2008, Comenout filed an administrative forfeiture action seeking the return of the seized cigarettes. The administrative proceeding was initially continued based on then-pending felony criminal charges against Comenout and his brother in Pierce County Superior Court. The criminal charges against Comenout were dismissed in 2010 after his death, and the criminal charges against his brother were dismissed in 2012.

In April 2013, both Comenout and the Board moved for summary judgment in the administrative forfeiture proceeding.[6] The administrative law judge (ALJ) issued an initial order granting the Board's motion and denying Comenout's motion. In the initial order, the ALJ concluded Comenout's store was located on trust land situated in Indian country as defined by state and Quinault tribal law and the cigarette tax compact. The ALJ rejected Comenout's arguments that he was not subject to state law and concluded he failed to demonstrate by a preponderance of the evidence he could lawfully own or possess the seized cigarettes.

---

[4] CP at 559.

[5] Id. at 560.

[6] Edward's estate represented his interest in the proceedings.

3

Comenout petitioned the Board for administrative review of the ALJ's initial order. The Board then issued a final order, adopting the initial order.

Comenout petitioned for judicial review of the Board's final order in Pierce County Superior Court. The superior court affirmed the Board's final order.

Comenout appeals the superior court's order.[7]

## ANALYSIS

### I. STATE COURT'S JURISDICTION

Comenout's primary argument is the State court lacked personal and subject matter jurisdiction to hear his motion to return the seized cigarettes under the APA because federal preemption applies. We are bound by our Supreme Court's 2011 decision in Comenout upholding the State's exercise of nonconsensual criminal jurisdiction over Comenout's conduct on his allotment property. Consistent with Comenout, the State has subject matter and personal jurisdiction over this administrative forfeiture.

The question in Comenout, the criminal case arising from the seizure of the same cigarettes at issue here, was whether the State has "criminal jurisdiction over tribal members selling unstamped cigarettes from an unlicensed store located on trust allotment property lying outside the borders of an Indian reservation."[8] The

---

[7] The Board issued an order directing destruction of the seized cigarettes a day after the parties' submitted briefing in this appeal. But according to the Board, the cigarettes have remained in storage pending resolution of this appeal.

[8] Comenout, 173 Wn.2d at 238. We note Comenout has consistently contested state jurisdiction to enforce laws on his allotment property since the early 1970s. See Comenout v. Washington, 722 F.2d 574, 576 n.2 (9th Cir. 1983) (Comenout had adequate remedy in state court, and thus, could not maintain his challenges to the enforcement of Washington tax laws and the legality of state and

court examined the application of RCW 37.12.010 to Comenout and his trust land.[9]

Under RCW 37.12.010, Washington assumed full nonconsensual civil and criminal

jurisdiction over Indian country outside of an established Indian reservation.[10]

The Comenout court reasoned that the facts in its case were very similar to

those in State v. Cooper.[11] In Cooper, our Supreme Court upheld the conviction of a

member of a recognized Indian tribe for a crime committed on allotted trust land

outside the boundaries of an Indian reservation.[12] Referencing RCW 37.12.010, the

Cooper court concluded that "[a]llotted or trust lands are not excluded from full

nonconsensual state jurisdiction unless they are 'within an established Indian

reservation.'"[13]

The Comenout court concluded Cooper controlled the outcome because, as in

Cooper, the criminal activity at issue in Comenout occurred on trust land outside of

an established Indian reservation.[14] Thus, the Comenout court held the State

possessed nonconsensual criminal jurisdiction over Comenout's selling of unstamped

---

local police arrests, searches, and seizures on his trust land in federal court); State v. Comenout, noted at 85 Wn. App. 1099 (1997) (superior court had jurisdiction to grant declaratory and injunctive relief prohibiting Comenout from selling fireworks without a state license and a city permit on his trust land) (unpublished opinion); Matheson v. Kinnear, 393 F. Supp. 1025 (W.D. Wash. 1974) (Comenout unsuccessfully sought to enjoin the Washington State Department of Revenue from searching his trust property and seizing unstamped cigarettes based on the assertion that his property was exempt from the state's excise tax under federal law).

[9] Comenout, 173 Wn.2d at 239-40.

[10] Id. at 238.

[11] Id. (citing State v. Cooper, 130 Wn.2d 770, 928 P.2d 406 (1996)).

[12] Cooper, 130 Wn.2d at 772, 776.

[13] Id. at 776 (quoting RCW 37.12.010).

[14] Comenout, 173 Wn.2d at 239-40.

5

cigarettes from an unlicensed store located on trust allotment property within Indian country but lying outside the borders of a reservation.[15] Consistent with Comenout and RCW 37.12.010, there is full civil and criminal jurisdiction.

Comenout argues our Supreme Court's decision in Comenout "is not binding" because the case was remanded and ultimately dismissed.[16] He relies on United States v. Real Property Located at 475 Martin Lane, Beverly Hills, California[17] for the proposition that a settlement renders a published opinion of no value. But no Washington authority supports this proposition, and that decision is not applicable here. Therefore, Comenout's argument fails.

Comenout's argument that the decision "is wrong and [superseded] by subsequent law" also fails.[18] Once our Supreme Court has "decided a question of law, that decision, when the question arises again, is not only binding on all inferior courts in this state, but it is binding on [our Supreme Court] until that case is overruled."[19] Therefore, Comenout's challenges to the decision would have to be taken to our Supreme Court.[20]

---

[15] Id.

[16] Appellant's Br. at 16.

[17] 545 F.3d 1134 (9th Cir. 2008).

[18] Reply Br. at 20.

[19] Godefroy v. Reilly, 146 Wash. 257, 259, 262 P. 639 (1928); State v. Pedro, 148 Wn. App. 932, 950, 201 P.3d 398 (2009).

[20] Pedro, 148 Wn. App. at 950 ("It is error for the Court of Appeals not to follow directly controlling authority by the Supreme Court."); State v. Gore, 101 Wn.2d 481, 487, 681 P.2d 227 (1984)).

Because our Supreme Court in <u>Comenout</u> already examined and rejected the basic premises underlying Comenout's federal preemption theory, we conclude the superior court had personal and subject matter jurisdiction to hear Comenout's motion to return the seized cigarettes under the APA.

## II. NOT EXEMPT FROM STATE CIGARETTE TAX AS "INDIAN RETAILER"

Comenout next claims that under <u>Confederated Tribes and Bands of the Yakima Nation v. Gregoire</u>,[21] an "Indian retailer" is not required to collect State cigarette tax from sales to non-Indians because the Act "does not *require* it."[22] Comenout's reliance on <u>Yakima Nation</u> is taken out of context.

In <u>Yakima Nation</u>, the Ninth Circuit examined Washington's cigarette excise tax and concluded precollection of taxes by Indian retailers even on the reservation itself was permitted.[23] After a 2004 cigarette tax compact between the Yakima Nation and the State was terminated, the Yakima Nation sought a determination that the Act was unenforceable against its tribes.[24] On appeal, the circuit court examined whether the legal incidence of the tax fell on the tribe or on tribal members for sales made inside Indian country.[25]

---

[21] 658 F.3d 1078 (9th Cir. 2011).

[22] Appellant's Br. at 13 (quoting <u>Yakima Nation</u>, 658 F.3d at 1087). The "Act" refers to the Washington cigarette tax, chapter 82.24 RCW. <u>Yakima Nation</u>, 658 F.3d at 1080.

[23] <u>Yakima Nation</u>, 658 F.3d at 1089.

[24] <u>Id.</u> at 1083.

[25] <u>Id.</u> at 1084.

7

"The 'legal incidence' of an excise tax refers to determining which entity or person bears the ultimate legal obligation to pay the tax to the taxing authority."[26] The court noted that "[w]hile it would be prudent for any Indian retailer to pass on and then collect the tax from consumers, **the Act does not *require* it**; rather that is an economic choice left to the Indian retailers."[27] Consistent with the United State Supreme Court's decision in Washington v. Confederated Tribes of Colville Indian Reservation,[28] the court held that precollection of tax is a minimal burden on the tribe and their retailers that did not contravene established principles of Indian tax immunity.[29] The administrative action below assessed Comenout's ability to legally possess unstamped cigarettes and did not reach the tax implications of such ownership. Therefore, Yakima Nation is inapposite.

Importantly, our Supreme Court already examined and rejected Comenout's argument that he was exempt from the State cigarette tax as an "Indian retailer" in Comenout. RCW 82.24.295(1) provides that the State cigarette tax does not apply to the "sale, use, consumption, handling, possession, or distribution of cigarettes by an Indian retailer during the effective period of a cigarette tax contract subject to

---

[26] Id.; accord Confederated Tribes of Colville Indian Reservation, 447 U.S. 134, 150-51, 100 S. Ct. 2069, 65 L. Ed. 2d 10 (1980) ("We upheld the tax, insofar as sales to non-Indians were concerned, because its legal incidence fell on the non-Indian purchaser" as "'the competitive advantage which the Indian seller . . . enjoy[ed] . . . [was] dependent on the extent to which the non-Indian purchaser is willing to flout his *legal obligation* to pay the tax.'" (emphasis added)) (quoting Moe v. Salish & Kootenai Tribes, 425 U.S. 463, 482, 96 S. Ct. 1634, 48 L. Ed. 2d 96 (1976)).

[27] Yakima Nation, 658 F.3d at 1087 (emphasis in bold added).

[28] 447 U.S. 134, 100 S. Ct. 2069, 65 L. Ed. 2d 10 (1980).

[29] Yakima Nation, 658 F.3d at 1089.

RCW 43.06.455." An "Indian retailer" includes "a business owned and operated by the Indian person or persons in whose name the land is held in trust."[30]

In Comenout, Comenout argued his store met the definition of "Indian retailer" and that "because the possession of the cigarettes occurred between the effective period of the cigarette tax compact between Washington and the Quinault Indian Nation, Washington's [cigarette] tax does not apply."[31] Our Supreme Court disagreed:

> The flaw in [Comenout's] argument is that RCW 82.24.020(5) says that if the State "enters into a cigarette tax contract or agreement with a federally recognized Indian tribe . . . , the terms of the contract or agreement take precedence over any conflicting provisions of this chapter while the contract or agreement is in effect." Significantly, the Quinault Indian Nation cigarette tax compact applies to the sale of cigarettes by "tribal retailers." The term "tribal retailers" is more limited than the statutory definition of "Indian retailer" in that it defines a "tribal retailer" as a "member-owned smokeshop located in Indian country and licensed by the Tribe."[32]

The court determined that although Comenout met the definition of "Indian retailer," he did not meet the definition of "tribal retailer" because his store was not licensed by the tribe.[33] Therefore, the court concluded Comenout was "not exempt from Washington's cigarette tax."[34]

Accordingly, we reject Comenout's arguments that he was exempt from the State's cigarette tax under Yakima Nation, that the "State has no adjudicative

---

[30] RCW 43.06.455(14)(b).

[31] Comenout, 173 Wn.2d at 240.

[32] Id.

[33] Id.

[34] Id.

jurisdiction to tax Indian owner activity on the property,"[35] and that the "federal courts have exclusive jurisdiction over allotment owners."[36] These arguments are all inconsistent with the binding decision in Comenout.

Likewise, we reject Comenout's argument that he is also not subject to Quinault tribal authority because his allotment property is outside the boundaries of the reservation. Comenout claims that although "'most areas of Indian country are subject to tribal authority,'" the "principle exception is certain Indian allotments outside reservations. The majority of off-reservation allotments are governed by functioning tribal governments but a substantial minority are not. *The latter are statutory Indian country and are subject to applicable federal statutes, which preempt state laws.*"[37] But this reasoning is inconsistent with Comenout. Additionally, Comenout fails to reconcile the Quinault Tribe's alleged lack of authority to regulate conduct on his allotment land when the very activity he is engaging in purports to be based on a license issued by the Quinault tribe.

III. VALIDITY OF THE STATE SEARCH WARRANT

Comenout challenges the validity of the search warrant, asserting that "State search warrants issued to search Indian country are not valid unless issued pursuant to Federal Rule of Criminal Procedure 41 and requested by a federal prosecutor."[38]

---

[35] Appellant's Br. at 18.

[36] Reply Br. at 1.

[37] Appellant's Br. at 33-34 (quoting FELIX S. COHEN, COHEN'S HANDBOOK OF FEDERAL INDIAN LAW ch. 5 § B2 at 278 (Strickland ed. 1982)).

[38] Appellant's Br. at 28-29.

In State v. Clark, our Supreme Court upheld the authority of a warrant issued by the Okanogan County District Court to search an enrolled tribal member's residence located on trust property within the borders of a reservation.[39] Clark argued evidence from the search should have been suppressed because the district court lacked authority to issue and execute the warrant.[40] The Court held that because "neither tribal sovereignty nor federal preemption inhibited the State's ability to issue and serve the warrant, the State could validly search Clark's property."[41]

The Supreme Court's decision in Clark is consistent with its decision in Comenout. If the State courts have criminal jurisdiction over selling unstamped cigarettes from an unlicensed store on trust property, then that would also extend to the State courts' authority to issue search warrants on that property for that particular type of conduct. Moreover, here, the Quinault tribal police officers assisted in the execution of the search warrant.

Therefore, we conclude the search warrant was valid.

## IV. CIGARETTES SEIZED WERE CONTRABAND

Comenout also argues none of the cigarettes seized were contraband. His arguments are not persuasive.

First, he argues there is no documentation any unstamped cigarettes were ever sold and thus, no crime occurred. But there is evidence in the record before the

---

[39] 178 Wn.2d 19, 308 P.3d 590 (2013).

[40] Id. at 23.

[41] Id. at 33.

agency that unstamped cigarettes were being sold at Comenout's store at the time the 376,852 packs of unstamped cigarettes were seized.[42]

Second, Comenout argues he has a right to possess unstamped cigarettes because, during transport to his store, there is a period of time the cigarettes would not yet be stamped. The State counters that there is a mechanism specifically in place for transport—RCW 82.24.250 provides that wholesalers licensed in Washington and persons who have given notice to the Board may transport unstamped cigarettes—but anyone transporting unstamped cigarettes in violation of the requirements renders those cigarettes to be deemed contraband and subject to seizure.[43] Here, Comenout did not provide the Board notice of any shipment of cigarettes in 2008 as required under RCW 82.24.250.[44]

Third, Comenout argues he is lawfully permitted to sell unstamped and untaxed cigarettes without a tobacco license in Indian country under Moe v. Confederated Salish & Kootenai Tribes of Flathead Reservation.[45] In Moe, the Court held the State of Montana could not impose a personal property tax on personal property owned by an Indian located within the reservation and that Montana could not require a reservation Indian to pay fees associated with a vendor license to sell cigarettes on the reservation itself.[46] Because the imposition of a licensing fee and

---

[42] See CP at 624-25.

[43] RCW 82.24.250(1), (3), (4).

[44] See CP at 549-50.

[45] 425 U.S. 463, 482, 96 S. Ct. 1634, 48 L. Ed. 2d 96 (1976).

[46] Id. at 480-81.

personal property taxes are unrelated to whether Comenout had a lawful right to possess unstamped cigarettes, we conclude Moe is inapplicable here.

Similarly, Comenout cites Confederated Tribes of Chehalis Reservation v. Thurston County Board of Equalization[47] for the proposition that he has a right to possess or own unstamped and untaxed cigarettes as a tribal member in Indian country. But in Chehalis, the Ninth Circuit held Thurston County could not impose a property tax on permanent improvements on leased property held by the Chehalis tribe outside of the reservation.[48] Because Chehalis prohibits the taxation of the land itself, a matter not at issue here, we reject Comenout's argument.

Accordingly, Comenout fails to establish any question of fact whether the unstamped and untaxed cigarettes were contraband. Not only did he fail to affix Washington or tribal stamps to the cigarettes as required under the tribe's cigarette tax compact, but he also failed to obtain a license from the tribe authorizing the sale of tobacco at his store.

## V. No Error of Law or Arbitrary and Capricious Action under APA Standards

Comenout also argues the Board's refusal to promptly return the unstamped seized cigarettes was an error of law under the APA.

The APA governs our review of the Board's final order.[49] This court sits in the same position as the superior court, applying the standards of the APA directly to the

---

[47] 724 F.3d 1153 (9th Cir. 2013).

[48] Chehalis, 724 F.3d at 1157.

[49] RCW 34.05.570; Tapper v. Emp't Sec. Dep't, 122 Wn.2d 397, 402, 858 P.2d 494 (1993).

record before the agency.[50] We apply an error of law standard.[51] We will not overturn an agency's legal determinations unless the agency engaged in an unlawful procedure or decision-making process, failed to follow a prescribed procedure, or erroneously interpreted or applied the law.[52] Comenout bears the burden of demonstrating the action was invalid.[53]

Where the original decision was on summary judgment, this court must "overlay the APA standard of review with the summary judgment standard."[54] Accordingly, we view the facts in the light most favorable to the nonmoving party.[55] Summary judgment "'is appropriate only where the undisputed facts entitle the moving party to judgment as a matter of law.'"[56] We evaluate the facts in the record de novo and the law in light of the error of law standard.[57] Under the error of law standard, we review the Board's legal conclusions de novo.[58]

---

[50] Tapper, 122 Wn.2d at 402.

[51] RCW 34.05.570(3); Engbrecht v. Emp't Sec. Dep't, 132 Wn. App. 423, 428, 132 P.3d 1099 (2006).

[52] Batchelder v. City of Seattle, 77 Wn. App. 154, 158, 890 P.2d 25 (1995) (quoting RCW 34.05.570(3)(c), (d)).

[53] RCW 34.05.570(1)(a).

[54] Skagit Cty. v. Skagit Hill Recycling, Inc., 162 Wn. App. 308, 318, 253 P.3d 1135 (2011)

[55] Verizon Nw., Inc. v. Emp't Sec. Dep't, 164 Wn.2d 909, 916, 194 P.3d 255 (2008).

[56] Lemire v. State, Dep't of Ecology, Pollution Control Hearings Bd., 178 Wn.2d 227, 232, 309 P.3d 395 (2013) (quoting id.)

[57] Verizon, 164 Wn.2d at 916.

[58] Fort v. State, Dep't of Ecology, 133 Wn. App. 90, 95, 135 P.3d 515 (2006) (citing RCW 34.05.570(3)(d)); City of Redmond v. Cent. Puget Sound Growth Mgmt. Hearings Bd., 136 Wn.2d 38, 45, 959 P.2d 1091 (1998)).

The APA governs the forfeiture action and any subsequent appeal.[59]  The burden of proof in a forfeiture action is on the claimant, who must demonstrate by a preponderance of the evidence he or she is legally entitled to possess the seized items.[60]

Because Comenout fails to establish any error of law or arbitrary and capricious action under the APA standards, we affirm.

WE CONCUR:

---

[59] RCW 82.24.135(5).

[60] Id.