# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 48990-2-II |
| Respondent, | Consolidated with |
| v. | |
| ROBERT REGINALD COMENOUT, JR., | UNPUBLISHED OPINION |
| Appellant. | |
| STATE OF WASHINGTON, | No. 48994-5-II |
| Respondent, | |
| v. | |
| LEE ALLEN COMENOUT, SR., | |
| Appellant. | |
| STATE OF WASHINGTON, | No. 49000-5-II |
| Respondent, | |
| v. | |
| MARLENE BILLY COMENOUT, | |
| Appellant. | |
| STATE OF WASHINGTON, | No. 49004-8-II |
| Respondent, | |
| v. | |
| ROBERT REGINALD COMENOUT, SR. | |
| Appellant. | |

MAXA, A.C.J. – In a consolidated case, Robert Comenout Jr., Lee Comenout Sr., Marlene Comenout, and Robert Comenout Sr. (collectively the Comenouts) appeal their convictions following their *Alford*[1] pleas to charges relating to the possession and sale of cigarettes in the operation of the Indian Country Store in Puyallup. The Comenouts allege that they are enrolled Indians doing business in Indian Country, and therefore that they are not subject to State criminal jurisdiction. The Indian Country Store is located on trust allotment property, but it is not within an Indian reservation.

We hold that (1) the State has criminal jurisdiction over the Comenouts for activity occurring on trust allotment property that is not located within an Indian reservation, (2) RCW 82.24.250, one of the statutes associated with their convictions, does not violate equal protection, (3) we decline to consider the Comenouts' claim that their respective informations were insufficient because they presented no meaningful argument on that claim, and (4) we decline to review the Comenouts' other claims that do not involve jurisdiction because they waived their right to appeal those claims when they pleaded guilty.

Accordingly, we affirm the Comenouts' convictions.

FACTS

*Indian Country Smoke Shop*

The Indian Country Smoke Shop, also known as the Indian Country Store, is a store in Puyallup that is located on allotment land held in trust by the United States. The store is not located within any Indian reservation.

---

[1] *North Carolina v. Alford,* 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

The store is owned and operated by members of the Comenout family. Robert Sr.[2] is an enrolled member of the Tulalip Tribes. Lee is believed to be an enrolled member of the Yakama Nation. Robert Jr. and Marlene also assert enrolled membership in federally recognized Indian tribes.

*2008 Charges and Supreme Court Decision*

In 2008, Robert Jr., Robert Sr., and Robert Sr.'s brother were charged with crimes related to the illegal sale of contraband cigarettes at the Indian Country Store. *State v. Comenout*, 173 Wn.2d 235, 237, 267 P.3d 355 (2011). They moved to dismiss for lack of jurisdiction. *Id.* The trial court denied the motions and the Supreme Court ultimately granted review. *Id.* The Supreme Court held that the State had criminal jurisdiction over Indians for activity on trust allotment property outside the borders of an Indian reservation. *Id.* at 236, 240-41.

In its opinion, the Supreme Court directed the parties to proceed to trial. *Id.* at 241. However, the State dismissed the prosecution in 2012.

*2015 Search and Charges*

In May 2015, State officials executed a search warrant on the Indian Country Store. The officials recovered thousands of cartons of unstamped cigarettes from the premises. The officials arrested Robert Jr., Lee, Marlene, and Robert Sr. – all present at the time of the search – in connection with the illegal sale of cigarettes. The State charged all four with multiple counts of engaging in or conducting the business of cigarette purchasing, selling or distributing without a

---

[2] To avoid confusion, we refer to each of the Comenouts individually by their first names. No disrespect is intended.

license, possession of more than 10,000 contraband cigarettes, and conspiracy to commit theft in the first degree.

*Guilty Pleas*

The Comenouts and the State reached plea agreements before the case went to trial, and each of them entered an *Alford* guilty plea. Robert Jr., Lee, and Robert Sr. were convicted of one count of engaging in the business of cigarette purchasing, selling or distributing without a license in violation of RCW 82.24.500 and one count of possession of more than 10,000 contraband cigarettes in violation of RCW 82.24.110(2)(b). Marlene was convicted of unlawful selling of untaxed cigarettes in violation of RCW 82.24.110(1)(a) and possession of less than 10,000 contraband cigarettes in violation of RCW 82.24.110(1)(o).

The Comenouts appeal their convictions.

## ANALYSIS

A.   SCOPE OF REVIEW

The Comenouts' convictions resulted from their *Alford* guilty pleas in the trial court. A voluntary guilty plea generally waives a defendant's right to appeal his or her conviction. *State v. Smith*, 134 Wn.2d 849, 852, 953 P.2d 810 (1998). Exceptions to this rule are claims involving (1) jurisdiction of the court, (2) sufficiency of the information, (3) validity of the statute, or (4) circumstances surrounding the plea. *State v. Cross*, 156 Wn.2d 580, 621, 132 P.3d 80 (2006).

The general waiver rule and the exceptions apply to *Alford* guilty pleas. *State v. DeRosia*, 124 Wn. App. 138, 141, 143, 100 P.3d 331 (2004).

B.    CRIMINAL JURISDICTION OVER INDIANS ON TRUST ALLOTMENT PROPERTY

As noted, jurisdiction is one of the issues that can be raised on appeal after a guilty plea. *Cross*, 156 Wn.2d at 621.  The Comenouts argue that the trial court did not have criminal jurisdiction over them regarding the charged crimes.  They claim that the State cannot exercise jurisdiction over Indians for criminal activities occurring on trust allotment property.  We disagree.

1.    Legal Principles

When the location of the charged crime is undisputed, we review de novo whether the State has criminal jurisdiction.  *State v. Jim*, 173 Wn.2d 672, 678, 273 P.3d 434 (2012).

RCW 9A.04.030(1) establishes that the State has criminal jurisdiction over any person who commits a crime in the state.  However, State jurisdiction over Indians within "Indian country" is governed by federal and state statutes.  *See Comenout*, 173 Wn.2d at 238.

From the beginning of Washington statehood, criminal offenses committed by Indians in Indian country were subject only to federal or tribal jurisdiction.  *State v. Shale*, 182 Wn.2d 882, 886, 345 P.3d 776 (2015).  For purposes of federal jurisdiction, Indian country includes property within the limits of an Indian reservation but also includes all Indian allotments.  18 U.S.C. § 1151.  Allotment property held in trust by the United States, such as the property at issue here, constitutes "Indian country."  *State v. Cooper*, 130 Wn.2d 770, 772 & n.3, 928 P.2d 406 (1996).

In 1953, Congress enacted legislation authorizing certain states, including Washington, to assume jurisdiction over Indians within a state's borders.  *Shale*, 182 Wn.2d at 887.  In 1963, Washington asserted criminal jurisdiction over Indians and certain Indian property:

The state of Washington hereby obligates and binds itself to assume criminal and civil jurisdiction over Indians and Indian territory, reservations, country, and lands within this

state in accordance with [federal legislation], *but such assumption of jurisdiction shall not apply to Indians when on their tribal lands or allotted lands within an established Indian reservation* and held in trust by the United States or subject to a restriction against alienation imposed by the United States.

RCW 37.12.010 (emphasis added).[3]

Under RCW 37.12.010, "[t]he State lacks jurisdiction over crimes committed on trust or allotment land *within reservation borders*." *State v. Clark*, 178 Wn.2d 19, 25, 308 P.3d 590 (2013) (emphasis added). However, the Supreme Court repeatedly has held that the State has criminal jurisdiction over crimes committed on Indian country that is not within an Indian reservation. *Clark*, 178 Wn.2d at 25; *Comenout*, 173 Wn.2d at 238-39; *Cooper*, 130 Wn.2d at 775-76. As the court stated in *Cooper*:

> Washington assumed full nonconsensual civil and criminal jurisdiction over all Indian country outside established Indian reservations. Allotted or trust lands are not excluded from full nonconsensual state jurisdiction unless they are "within an established Indian reservation."

130 Wn.2d at 775-76 (quoting RCW 37.12.010).

In *Comenout*, the Supreme Court directly addressed the State's jurisdiction over cigarette-related crimes allegedly committed on the same off-reservation trust allotment property at issue here. 173 Wn.2d at 236-37. The court addressed the following issue:

> [D]oes the State of Washington have criminal jurisdiction over tribal members selling unstamped cigarettes from an unlicensed store located on trust allotment property lying outside the borders of an Indian reservation?

*Id.* at 238.

---

[3] RCW 37.12.010 also assumed jurisdiction on Indian reservations for eight enumerated categories of law not relevant here. *See Cooper*, 130 Wn.2d at 773-74.

6

The court acknowledged that the defendants were enrolled Indians and that the Indian Country Store was within Indian country, but emphasized that the store was located on two trust allotments outside the boundary of any Indian reservation. *Id.* at 237. The court stated that the State through RCW 37.12.010 had "asserted full criminal jurisdiction, with a few exceptions not relevant to this case, over all Indian country outside established Indian reservations." *Id.* at 238. The court noted the similar statement in *Cooper*, and stated that *Cooper* controlled. *Comenout*, 173 Wn.2d at 238-39. Accordingly, the court held that the State had criminal jurisdiction over the alleged unlawful sale of cigarettes from the Indian Country Store – the same store involved here. *Id.* at 236.

2. Jurisdiction Analysis

The State does not contest that each of the Comenouts is an enrolled tribal member. And their store is located on trust allotments that constitute Indian country. *Comenout*, 173 Wn.2d at 237. However, it is undisputed that the Indian Country Store the Comenouts operated is not located within the border of any Indian reservation. Under settled law, the State has criminal jurisdiction over crimes committed at the store. *Id.* at 238-39.

The Comenouts argue that the Supreme Court's decision in *Comenout* should not control. They claim that because the State dismissed the prosecution on remand, the case did not result in a binding final judgment and therefore lacks precedential effect. However, the subsequent history of the criminal case in *Comenout* is immaterial because the State is not asserting collateral estoppel or res judicata. Instead, the court's decision in *Comenout* controls here because it established a legal principle that has binding effect under principles of stare decisis. Further, the Comenouts ignore the fact that in cases both before and after *Comenout*, the

7

Supreme Court adopted the same rule: that the State has jurisdiction over crimes committed on allotment property not within an Indian reservation. *Clark*, 178 Wn.2d at 25; *Cooper*, 130 Wn.2d at 775-76.

The Comenouts also argue that *Comenout* was wrongly decided for various reasons. However, we cannot disregard directly controlling Supreme Court precedent. *State v. Mathers*, 193 Wn. App. 913, 923, 376 P.3d 1163, *review denied*, 186 Wn.2d 1015 (2016).

Accordingly, we hold that the trial court had jurisdiction over the Comenouts in this case for the offenses occurring on allotment property.

C.      EQUAL PROTECTION CLAIM

The Comenouts argue that the State prosecution violated their equal protection rights under the Fourteenth Amendment to the United States Constitution. They argue that RCW 82.24.250 is unconstitutional because it treats Indian transporters differently than United States agencies such as the military. We disagree.

One of the exceptions to the general rule that a defendant's guilty plea waives his or her right to appeal is for "validity of the statute." *Cross*, 156 Wn.2d at 621. The Comenouts argue that RCW 82.24.250 violates equal protection and therefore is invalid because it places burdens on Indians and other transporters to provide notice while not requiring agencies of the federal government or military to follow the same procedures.[4] We disagree.

Division Three of this court addressed a similar equal protection challenge to the state cigarette tax requirements in *Matheson v. Liquor Control Bd.*, 132 Wn. App. 280, 287, 130 P.3d

---

[4] The "validity of the statute" exception presumably applies only to the validity of the statute the defendant pleaded guilty to violating. The Comenouts pleaded guilty to violating other statutes, not RCW 82.24.250. Nevertheless, we will consider the equal protection argument.

897 (2006). In that case, the appellant also argued that the cigarette tax laws violated equal protection by exempting military bases but not Indian reservations. *Id.* The court stated:

> While the United States Supreme Court has upheld taxes for on-reservation cigarette sales to non-Indians or nontribal Indians, it has specifically prohibited state taxes on cigarettes sold to federal instrumentalities, like military [bases]. *See* [*Washington v.*] *Confederated Tribes of Colville*, 447 U.S. [134,] 160[, 100 S. Ct. 2069, 65 L. Ed. 2d 10 (1980)]; *Hancock v. Train*, 426 U.S. 167, 178-79, 96 S. Ct. 2006, 48 L. Ed. 2d 555 (1976). Washington's tax scheme simply recognizes this prohibition. For these reasons, the Ninth Circuit has specifically rejected an identical equal protection argument. *See* [*United States v.*] *Baker*, 63 F.3d [1478,] 1490-91, [(9th Cir. 1995)].

*Id.*

We agree with the analysis in *Matheson*. State tax laws do not impose the same restrictions on federal agencies as on Indian transporters because the State *cannot* impose such restrictions on federal agencies. *Id.* Therefore, we hold that RCW 82.24.250 does not violate equal protection.

D.     SUFFICIENCY OF THE INFORMATIONS

Sufficiency of the information is another of the issues that can be raised on appeal after a guilty plea. *Cross*, 156 Wn.2d at 621. The Comenouts claim in their reply brief that their informations were insufficient because the informations misstated the elements of the charged crimes.

We may decline to address a claim that is not supported by meaningful argument. *State v. Arredondo*, 188 Wn.2d 244, 262, 394 P.3d 348 (2017) (declining to consider arguments not supported or included in briefs). Here, the Comenouts did not assign error to the sufficiency of the informations. Further, the Comenouts do not actually argue that the informations were

insufficient. Instead, they argue that state tax laws cannot apply to Indians. Accordingly, we decline to consider the Comenouts' claim that their informations were insufficient.

E.    ADDITIONAL CLAIMS

The Comenouts assert several additional claims, including: (1) the arrest and search warrants issued here were invalid because state courts do not have authority to issue warrants to be executed in Indian country; (2) the State's decision not to charge Martina Garrison, a non-Indian, amounts to selective prosecution and a violation of their right to equal protection; (3) Congress did not authorize the State to tax personal property of Indians; (4) federal law has preempted the state cigarette taxation laws; (5) the law regarding the taxation of cigarettes has changed since *Comenout* was decided and makes *Comenout* obsolete; (6) because only wholesalers can purchase tax stamps, non-Indian purchasers are required to pay the tax directly to the Department of Revenue and the Comenouts had no obligation to collect the tax; and (7) enrolled Indians can legally possess unstamped cigarettes and therefore the cigarettes the Comenouts possessed could not have been contraband.

However, none of the Comenouts' additional claims fall within one of the four exceptions to the rule that a guilty plea waives a defendant's right to appeal. *Cross*, 156 Wn.2d at 621. Claim (1) relates to the authority of a state court to issue a warrant, not the state's jurisdiction over criminal matters. Claim (2) clearly has nothing to do with jurisdiction. And claims (3) through (7) relate to the merits of the charges against the Comenouts – the applicable law regarding the taxation of cigarettes. These claims do not address jurisdiction. Therefore, we hold that the Comenouts waived their right to assert these additional claims on appeal and we decline to consider these claims.

No. 48990-2-II

CONCLUSION

We affirm the convictions of Robert Comenout Jr., Lee Comenout Sr., Marlene Comenout, and Robert Comenout Sr.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, A.C.J.

We concur:

JOHANSON, J.

MELNICK, J.

11